RICHMOND CHAMPION v. TERRELL VINCENT.

The law supposes that every trespass, committed upon property, is necessarily attended with some damage, however inconsiderable the injury; and hence the right to a recovery for a trespass cannot be denied.

But this was not a bare, technical trespass; it was committed deliberately, in wilful violation of the plaintiff's rights, in a manner and under circumstances of aggravation, showing a violent, reckless and lawless spirit; and in such cases the law allows damages beyond the strict measure of compensation, by way of punishment and for example's sake.

Where the defendant, whose fence was not a lawful one, shot plaintiff's hogs, which were in defendant's potato patch, rooting up his potatoes; there being at the time a bad state of feeling between the plaintiff and defendant; and plaintiff sent and got the hogs and used them; it was held that the plaintiff did not thereby waive his right to demand damage for the trespass, but merely his claim for the value of the hogs.

Appeal from Brazoria. Tried below before the Hon. James H. Bell.

Suit commenced by appellant against appellee, in a Justice's Court, for the value of three hogs, the property of plaintiff, killed by defendant by shooting, $25; exemplary damages for killing said hogs, $75. Judgment in the Justice's Court for plaintiff for $10, value of the two hogs, and $75 exemplary damages. Removed by defendant, by certiorari, to the District Court.

At the trial in the District Court, the evidence was as follows:—

The plaintiff introduced P. A. Ashe, as a witness, who testified that he was acquainted with both the parties to this suit; that he saw defendant Vincent shoot three hogs of plaintiff's, about the time charged by plaintiff; that the hogs were in defendant's potato patch, rooting up the potatoes; that the fence of defendant was good around the potato patch, except about a panel and a half next to Oyster creek; that defendant and all the neighbors used Oyster creek as a fence; witness and defendant Vincent were living at the same place at the time the hogs were killed; that the hogs were worth four or five dollars per head.

On cross-examination, the defendant's counsel asked witness if plaintiff's hogs had not been very troublesome to defendant all spring before the killing, to which question plaintiff excepted, which exception was overruled. The witness testified that plaintiff's hogs had been very troublesome to defendant for a long time previous to the killing, by getting into defendant's field and rooting up his crop, so much so that he, witness, would have killed them a long time before, even if they had been his grandfather's; that he, witness, did not think Vincent killed said hogs with any malice; that plaintiff sent and got two of the hogs killed on the day they were killed; that one of the hogs was wounded, and that plaintiff sent to witness next morning a request to kill the wounded hog and send it to him; that defendant said he would kill the hog, as witness was engaged at the time; that defendant took his gun, killed the hog, and sent it to plaintiff.

Direct examination resumed. Witness testified that the fence of defendant was very bad at the time of the killing, around his whole place, except the garden, where the hogs were killed, and that the fence around the garden, about a panel and a half next the creek, was so that hogs, horses and cows could go in or out; that the state of feeling between plaintiff and defendant had been bad for a long time; that they were not on speaking terms; witness said that other persons' hogs had been in defendant's yard, and around about his fence lot; that there was a good

fence between the yard and potato patch; that defendant did not kill their hogs, but dogged them away. The plaintiff's counsel then asked witness if there had been any previous difficulty between the parties, about stock getting into defendant's field; to which defendant excepted, and the exception was sustained.

The plaintiff then introduced Joseph Millar, who testified that he was at the house of plaintiff on Sunday evening, in the house; that he heard three (3) shots; he went to the door, and saw defendant walk up the bank of the creek, a short distance from the house, with a pistol in his hand; that he saw two of Mr. Champion's hogs, which were shot under the hill; that the hogs were worth $4 or $5 each; that plaintiff sent and got the hogs and used them; that the fence around the whole of defendant's place was bad, except the potato patch, so that it would not turn any kind of stock. The plaintiff here rested. The defendant offered no testimony.

The Judge instructed the jury as follows :—

The laws of this State require every gardener, farmer, or planter, to make a sufficient fence about his cleared land in cultivation, at least five feet high; and to make such fence sufficiently close to prevent hogs from passing through the same, not leaving a space of more than six inches, in any one place, for at least three feet high from the surface of the earth.

If any person whose fence is insufficient shall, with guns, dogs, and otherwise maim, wound or kill any horses, or cattle, or hogs, or cause or procure the same to be done, such person so offending is liable in damages to the person who owns the animals so injured or destroyed.

If Vincent killed the hogs because they broke into his enclosure, and were damaging his crop, without any malice towards the plaintiff, and without any circumstances of oppression or insult, then the plaintiff can only recover the value of the hogs as proved.

If the jury believe from the evidence, that the defendant killed the plaintiff's hogs maliciously, and with intention to insult, wrong, or oppress the plaintiff, the jury may assess exemplary damages against the defendant, not to exceed the sum claimed in plaintiff's petition.

If the defendant killed the plaintiff's hogs because they were damaging his crop, and without any malice, and if you believe further, from the evidence, that the plaintiff took the hogs or any of them after they were killed, and used them, then the

plaintiff cannot recover for the hogs so received and used by plaintiff.

Verdict and judgment for the defendant; motion for new trial overruled, &c.

*J. B. & G. A. Jones,* for appellant.　I. It was no excuse for defendant that plaintiff's hogs had previously given him trouble, nor could that fact mitigate in any manner the damages; and taking into consideration the condition of defendant's fence, as shown by the evidence, the fact that plaintiff's hogs had been troublesome to defendant would neither justify the act of killing them, nor mitigate the damages, but on the contrary would aggravate, rather than diminish the damages.

II. The fact that the plaintiff took the hogs after they were killed, and used them, can make no difference as to his right to recover for the trespass; and if that fact avails anything, it shows that he was actuated by a more laudable feeling than that which prompted the killing.

III. There was certainly error in overruling the motion for a new trial.

This, though a small case in amount, is of vast importance to the country.　Texas is essentially an agricultural country, and the laws regulating the rights and privileges of a neighborhood of farmers or planters, are of the first importance to a large majority of the population, and their violation should not be treated lightly, because of the smallness of the amount in controversy.

A disregard of the rights of others in matters exactly similar to the subject matter of this suit, in connection with the inadequate redress for injuries usually afforded by our Courts, has been and will continue to be, one of the most fruitful sources of discord and bloodshed in our country.

The facts show most conclusively that the plaintiff has a right to recover, not only the mere amount of actual damages, but vindictive damages.

*Munson & Lathrop,* for appellee.　There is no evidence of malice or intention to wound or insult the appellant on the part of the appellee.

Of the grounds of error relied upon by the appellant, we shall only notice those relating to the third and fifth charges of the Court to the jury.　If those charges are correct, as we think

they are, the verdict and judgment are certainly in accordance with them.

The appellant insists that in this case he is entitled to exemplary damages, from the mere fact that the hogs were killed in an inclosure which was not a legal one.

The case of Cole v. Tucker, 6 Tex. R. 266, which is relied upon by the appellant in support of the doctrine, that when a horse, cattle or hog, is killed within an inclosure, not a legal one, the person committing the trespass is liable for exemplary or vindictive damages. We think the Court decided no such thing. By reference to the case it will be seen that what was decided was, that if the killing was to take place in a wanton, rude or aggravated manner, indicating a desire to injure or annoy, or if it was done with malice, the jury ought to give exemplary damages ; but if no malice or intention to wound the feelings or annoy or insult was intended, the measure of damages should be the value of the animal killed. (See Smith v. Sherwood, 2 Tex. R. 460 ; Sedgwick on Measure of Damages, pages 26, 27, 530.)

If then, as we contend, the measure of damages in this case was the value of the hogs killed, there is no proof of any other damage than the value of the hogs. We admit that in cases of trespass, the party committing the trespass is liable for nominal damages. But he can waive the trespass or tort, as the appellant did in this case by accepting the hogs. (Chitty on Contracts, p. 23, 24, 607.) If we had made a tender of the hogs, the only effect it would have had on a subsequent suit, would have been to mitigate damages. But by accepting the hogs and using them, he certainly waived all right to damages of any kind. We think the charge of the Court was proper. There was no evidence that the hogs were more valuable in one shape than in another.

WHEELER, J. We think the Court erred in the last instruction given to the jury. For every infraction of a man's legal rights, the law gives a remedy by action. And was it not an infraction of the plaintiff's rights to have his property shot down without his consent and against his will ? Undeniably it was a trespass, for which an action will lie, and for which the plaintiff is entitled to recover damages. The law supposes that every trespass, committed upon property, is necessarily attended with some damage, however inconsiderable the injury; and hence the right to a recovery of damages for a trespass, cannot be denied.

But this was not a bare technical trespass; it was committed deliberately, in wilful violation of the plaintiff's rights, in a manner and under circumstances of aggravation, showing a violent, reckless and lawless spirit; and in such cases the law allows damages beyond the strict measure of compensation, by way of punishment and for example's sake. (1 Kent, Com. 618, n. 7th edit.) There was nothing to justify or palliate the act; it was just such an act as necessarily tends to violence and breaches of the peace, and neighborhood animosities; which destroy the harmony, peace and good order of society; and was eminently a case for damages by way of punishment and prevention. In trespass, where the party wantonly violates the law, " the jury should not be sparing in the damages." (Lord Abinger, 1 Meeson & Welsby, 342 (2).)

Nor do we think the plaintiff waived his right of action for damages for the trespass, by taking and using the property after the trespass had been consummated. He thereby relieved the defendant from liability to answer for the value of the property, but not for the trespass. Suppose the hogs had been in the plaintiff's own pen or inclosure, and the defendant had chosen to shoot them down there, because they had been troublesome to him, and he would have had equal right, must the plaintiff have suffered them to rot upon the ground, or thrown them to the dogs, in order to have a right of action against the defendant for the trespass? That will scarcely be pretended.

The case, in short, is this: the defendant undertakes to raise a crop without an inclosure, or with what is equivalent to none, to protect it against his neighbors' stock, and because they are troublesome, he deliberately takes his pistol and goes and shoots them down, instead of being at the trouble of putting up the fence, or making a fence, to protect his crop. And is his neighbor to have no redress for this wrongful and outrageous invasion of his indisputable rights of property, because he, actuated by a better spirit, makes the least he can of the injury, by appropriating the property to such purposes as, in its then state, it is susceptible of? We cannot assent to such a doctrine. Though the value of the matter here in controversy is small, the case involves a principle of grave consequence: it is, whether the law shall afford a man redress for a flagrant wrong, or leave him to find his own redress; which he would have too strong a temptation to do. It is not surprising that the offices of good neighborhood were interrupted between these neighbors, and that they

were not on speaking terms, which in itself renders the act one of aggravation. But it is surprising that the jury should have found no evidence of malice in the positive proof of the wilfulness and deliberation of the act, and the animosity existing between the parties. The judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.