**GENERAL MILLS RESTAURANTS, INC. n/k/a GMRI, Inc., Appellant,**

v.

**TEXAS WINGS, INC. d/b/a Hooters, TWI XII, Inc., and Plano Wing's, Ltd., Appellees.**

No. 05–99–00354–CV.

Court of Appeals of Texas, Dallas.

Feb. 4, 2000.

---

Mark R. Steiner, Cohan Simpson Cowlishaw & Wulff, L.L.P., Dallas, for Appellant.

Marston Alexander, Smith, Underwood & Perkins, Dallas, for Appellee.

Before Justices KINKEADE, OVARD, and WHITTINGTON.

## OPINION

Opinion By Justice WHITTINGTON.

General Mills Restaurants, Inc. n/k/a GMRI, Inc. ("GMRI") appeals a summary judgment in favor of Texas Wings, Inc. d/b/a Hooters, TWI XII, Inc., and Plano Wing's, Ltd. ("Hooters"). On appeal, GMRI contends the trial judge erred in granting Hooters's motion for summary judgment because (i) the summary judgment evidence establishes genuine issues of material fact with respect to GMRI's trespass and nuisance claims; (ii) Hooters failed to establish as a matter of law that it was entitled to prevail on an affirmative defense; and (iii) the trial judge granted summary judgment on claims not addressed in the motion for summary judg-

ment. We agree that Hooters did not establish it was entitled to summary judgment. Accordingly, we reverse the trial court's summary judgment and remand this cause for further proceedings.

### BACKGROUND

GMRI owns and operates The Olive Garden restaurant at the intersection of U.S. 75 and Plano Parkway in Plano. It leases the land, including the surrounding parking lot, from James Stalker. Stalker also owns the land adjacent and to the north of The Olive Garden land, which he leased for the construction of a Rootys restaurant. Rootys subsequently closed and, in 1995, renovations began to convert the building into a Hooters restaurant. One of the changes made to the building was to move the entrance from the north side to the southwest side of the building, nearer The Olive Garden's entrance.

During the renovation period, The Olive Garden's manager, Renee Palmer, spoke with Hooters's representatives, expressing her concern that Hooters's customers might use The Olive Garden's parking on the north side of The Olive Garden building. When Hooters's representatives stated they believed the parking between the two buildings was common parking, Palmer told them the parking belonged to The Olive Garden.

Hooters opened for business in late 1995 and, since that time, Hooters's customers have continually parked in the parking spaces to the north of The Olive Garden restaurant. Although Palmer complained to Stalker and attempted to meet with the manager of Hooters, the parking situation did not change. In October 1996, Palmer informed Stalker that if he did not correct the situation, she would take steps to correct it and would look to Stalker for payment of the cost of the remedy. Palmer then hired a valet service to assist with parking. She later posted two signs in the north parking area indicating the parking spaces were for The Olive Garden's patrons. The original signs were removed

without Palmer's consent and later replacement signs were destroyed. After the valet service was terminated, Palmer hired a security service to walk the parking lot and inform people that the spaces at issue were for The Olive Garden's customers. GMRI gave Stalker the invoices for the security charges. When Stalker did not pay, GMRI deducted the payments from its rent.

On March 5, 1997, Stalker sued GMRI for breach of contract, alleging that GMRI owed unpaid rents under the lease. In response, GMRI filed a general denial, a counterclaim for breach of contract (breach of covenant of quiet enjoyment), and a third-party petition against Hooters for trespass. On May 11, 1998, GMRI filed its third amended answer, counterclaim, and third-party petition. In this pleading, GMRI alleged additional causes of action against Hooters, including nuisance, negligence, trespass, and violations of sections 36.11 and 36.25 of the Texas Business and Commerce Code. In addition, GMRI sought a declaratory judgment that Hooters was a nuisance by virtue of the continuing trespass of its employees and patrons and an injunction to prevent Hooters's employees and patrons from trespassing on GMRI's parking lot.[1]

On August 31, 1998, Hooters filed a motion for summary judgment against GMRI alleging the following grounds:

(i) Hooters is "entitled to judgment as a matter of law because the uncontradicted summary evidence establishes as a matter of law there is no genuine issue of material fact as to at least one element of the causes of action asserted" by GMRI against Hooters because

(a) "there is no evidence that [GMRI] was damaged as the result of any act or omission (intentional, negligent or otherwise) of any agent, employee, officer, director or representative of [Hooters];"

(b) GMRI "should be precluded from offering any alleged evidence that [GMRI] was damaged as the result of any act or omission (intentional, negligent or otherwise) of any agent, employee, officer, director or representative of [Hooters];" and

(c) "any alleged use of parking spaces by patrons of [Hooters] did not in any way obstruct access of [GMRI's] patrons to [GMRI's] restaurant and, as such, were [sic] so brief as to be merely incidental and for which [Hooters] should not be in any way held liable."

(ii) "there is no genuine issue of material fact that [Hooters's] efforts to prevent its patrons from allegedly using [T]he Olive Garden parking spaces were at all times reasonable under the facts and circumstances."

(iii) there is "no evidence that any agent, employee, officer, director, or representative of [Hooters] committed any act of trespass in that at all times [T]he Olive Garden was a public place, open to business to the general public or that [Hooters] in any way encouraged such acts."

(iv) GMRI "consented to the use of its parking spaces by all members of the public."

In support of its motion, Hooters attached excerpts from Palmer's deposition testimony. GMRI filed a response to the motion, attaching additional portions of Palmer's deposition testimony along with excerpts

---

1. Specifically, GMRI claimed Hooters (i) was a nuisance because the illegal parking interfered with GMRI's use of its premises; (ii) had a duty, as an adjacent possessor of land, to see that its employees and patrons did not trespass and breached that duty by failing to institute a mechanism to control its employees and patrons; (iii) despite being on notice of the continual trespasses of its customers and employees, had advised, encouraged, or ratified its customers' and employees' tortious conduct by failing to take steps to prevent same and therefore was liable as a joint trespasser; and (iv) had violated the Texas Business and Commerce Code by failing to file assumed name documents with either the Texas Secretary of State or the office of the Dallas or Collin county clerks.

from the depositions of Stalker and Dennis O'Hayre, Hooters's general manager. On February 15, 1999, after considering the motion and response, the trial judge granted summary judgment in favor of Hooters. Four days later, the trial judge signed an order, dismissing GMRI's and Stalker's claims against each other. This appeal followed.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

### Rule 166a(c)

■ The standards for reviewing summary judgment under rule 166a(c) are well established. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 394 (Tex.App.-Dallas 1998, no pet.). To prevail on summary judgment, a defendant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *International Union United Auto. Aerospace & Agric. Implement Workers of Am. Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 563 (Tex.App.-Dallas 1991, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 828 (Tex.App.-Dallas 1994, writ denied). Where, as here, summary judgment does not state the grounds upon which it was granted, the nonmovant must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *See Thomson v. Norton*, 604 S.W.2d 473, 476 (Tex.Civ.App.-Dallas 1980, no writ); *Orozco*, 975 S.W.2d at 394. If a movant does not show its entitlement to judgment as a matter of law, we must remand the case to the trial court for further proceedings. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *Texas Stadium Corp. v. Savings of Am.*, 933 S.W.2d 616, 618 (Tex.App.-Dallas 1996, writ denied).

### Rule 166a(i)

■ Rule 166a(i) provides:

After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX.R. CIV. P. 166a(i). When a motion is presented under rule 166a(i) asserting there is no evidence of one or more essential elements of the nonmovant's claims upon which the nonmovant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense. *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 432–33 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Rather, the burden shifts to the nonmovant to present enough evidence to be entitled to a trial, *i.e.*, evidence that raises a genuine fact issue on the challenged elements. *See* TEX.R. CIV. P. 166a cmt. If the nonmovant is unable to provide enough evidence, the trial judge must grant the motion. *See Lampasas*, 988 S.W.2d at 433.

Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency

standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *See Roth v. FFP Operating Partners, L.P.*, 994 S.W.2d 190, 195 (Tex.App.-Amarillo 1999, pet. denied); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.). Thus, our task as an appellate court is to determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Roth*, 994 S.W.2d at 195; *Jackson*, 979 S.W.2d at 70. We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Jackson*, 979 S.W.2d at 70–71. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow*, 953 S.W.2d at 711.

### No-Evidence Summary Judgment

In subissues one and five, GMRI contends the trial judge erred in granting Hooters summary judgment on the grounds that there is no evidence (i) "that any agent, employee, officer, director, or representative of [Hooters] committed any act of trespass in that at all times [T]he Olive Garden was a public place, open to business to the general public or that [Hooters] in any way encouraged such acts"and (ii) "GMRI was damaged as the result of any act or omission (intentional, negligent or otherwise) of any agent, employee, officer, director or representative of [Hooters]." Under both subissues, GMRI contends the trial judge erred because GMRI provided some evidence of trespass by Hooters's employees and was not required to establish lost profits or

sales as an element of trespass. We agree.

■ Trespass to real property occurs when a person enters another's land without consent. *See Cain v. Rust Indus. Cleaning Servs. Inc.*, 969 S.W.2d 464, 470 (Tex.App.-Texarkana 1998, pet. denied); *Watson v. Brazos Elec. Power Coop., Inc.*, 918 S.W.2d 639, 645 (Tex.App.-Waco 1996, writ denied). Every unauthorized entry is a trespass "even if no damage is done." *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827 (Tex.1997) (citing *McDaniel Bros. v. Wilson*, 70 S.W.2d 618, 621 (Tex.Civ.App.-Beaumont 1934, writ ref'd)); *Watson*, 918 S.W.2d at 645; *see also Champion v. Vincent*, 20 Tex. 811, 815 (1858) ("The law supposes that every trespass, committed upon property, is necessarily attended with some damage, however inconsiderable the injury; and hence the right to a recovery of damages for a trespass cannot be denied."). Even if a plaintiff fails to plead or prove that the defendant did any injury by entering plaintiff's property, the plaintiff is still entitled to nominal damages. *See Meyers v. Ford Motor Credit Co.*, 619 S.W.2d 572, 573 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ) ("The law is well settled that a trespasser is liable to the property owner even though there is no proof of actual damages in any specific amount."); *Henry v. Williams*, 132 S.W.2d 633, 634 (Tex.Civ. App.-Beaumont 1939, no writ) (by alleging and proving trespass, appellants "were entitled, at least, to nominal damages"); *see also Smith v. Huizar*, 25 Tex. 205, 206 (Supp.1860) (if plaintiff fails to lay foundation for or prove damages, he is entitled to nominal damages for trespass).

In its motion for summary judgment, Hooters first alleged there was no evidence that "any agent, employee, officer, director, or representative of [Hooters] committed any act of trespass." GMRI filed a response to the motion and attached Palmer's affidavit and portions of her deposition testimony. In her deposition, Palmer testified that on several occasions,

she had personally observed people she knew to be "either a patron or an employee of Hooters" park in the parking spaces at issue. In her affidavit, Palmer testified, "Once Hooters began operation, patrons and employees of Hooters have continually parked in the parking spots on the north side of [The Olive Garden].... The parking taken by patrons and employees of Hooters is some of the most desirable parking for patrons of The Olive Garden." Hooters does not dispute that the parking spaces north of The Olive Garden are leased exclusively to GMRI for The Olive Garden parking. We have reviewed this evidence and, after doing so, conclude it presents "more than a scintilla of probative evidence" showing that Hooters's employees trespassed.

■ Next, Hooters alleged there was no evidence GMRI was damaged. In support of this argument, Hooters attached Palmer's deposition testimony in which she and GMRI's attorney, Mark Steiner, stated that GMRI was not "seeking to recover economic loss or loss of sale." Hooters argued that because GMRI did not seek lost sales or profits, it necessarily follows there are no damages for any alleged trespass by Hooters. We disagree. Hooters's argument ignores the fact that a party suing for trespass is not required to show economic damages. *See Meyers,* 619 S.W.2d at 573. Further, even assuming GMRI was required to make such a showing to prevent a no-evidence summary judgment, it met its burden by attaching relevant portions of Palmer's affidavit in which she testified GMRI spent $200 for the original parking signs, $2500 for replacement signs and, as of August 31, 1998, in excess of $40,000 for security services. This testimony is sufficient to meet the "more than a scintilla of probative evidence" standard to prevent a no-evidence summary judgment.

We note additionally that, although it is unclear from Hooters's motion whether it also sought summary judgment on the ground that there was no evidence of dam-

ages on GMRI's nuisance claim, we would similarly conclude GMRI was not limited to economic loss as damages for nuisance. *See Meat Producers, Inc. v. McFarland,* 476 S.W.2d 406, 412 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.) (appropriate measure of damages is that "which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the aggrieved landowner is entitled"); *Sanders v. Miller,* 52 Tex.Civ.App. 372, 379, 113 S.W. 996, 1000 (1908, no writ) (whether party injured is entitled to damages for nuisance depends on whether nuisance was "susceptible" of abatement). Because GMRI raised fact issues on whether Hooters's employees trespassed and, to the extent it was required, GMRI suffered damages, we conclude the trial judge erred to the extent he granted Hooters a no-evidence summary judgment. *See Jackson,* 979 S.W.2d at 70–71.

### TRADITIONAL SUMMARY JUDGMENT

In subissues three, four, and six, GMRI contends the trial judge erred in granting Hooters summary judgment on the grounds that (i) any alleged use of parking spaces by Hooters's employees or patrons did not obstruct access of GMRI's patrons to The Olive Garden restaurant and, therefore, was so brief as to be merely incidental and for which Hooters should not be liable, (ii) there is no genuine issue of material fact that Hooters's efforts to prevent its patrons from allegedly using The Olive Garden parking spaces were at all times reasonable under the facts and circumstances, and (iii) GMRI consented to the use of its parking spaces by all members of the public. We address each ground in turn.

### Nuisance

■ Nuisance is a "condition which substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Watson,* 918 S.W.2d at 644. A

nuisance may occur as: (i) physical harm to property, such as encroachment of a damaging substance or by the property's destruction; (ii) physical harm to a person on his or her property, such as by an assault to his or her senses or by other personal injury; and (iii) emotional harm to a person from the deprivation of the enjoyment of his or her property, such as by fear, apprehension, offense, or loss of peace of mind. *See Cain,* 969 S.W.2d at 470; *Maranatha Temple, Inc. v. Enterprise Prods. Co.,* 893 S.W.2d 92, 99 (Tex. App.-Houston [1st Dist.] 1994, writ denied).

■ In its motion for summary judgment, Hooters claimed it was entitled to summary judgment because any alleged act or omission by Hooters did not "obstruct access" to GMRI's property. Even assuming Hooters conclusively established it did not obstruct the access of GMRI's patrons, Hooters nevertheless would not be entitled to summary judgment as a matter of law. Nuisance, as noted previously, occurs as a result of a substantial interference "with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it"; it is not limited to obstructing access. Thus, Hooters's argument based on the lack of any "obstructed access" does not negate at least one element of GMRI's nuisance claim, and Hooters is therefore not entitled to summary judgment on this issue.

### Consent

■ Actual or apparent consent is an affirmative defense to a cause of action for trespass. *See Carr v. Mobile Video Tapes, Inc.,* 893 S.W.2d 613, 623 (Tex. App.-Corpus Christi 1994, no writ). Apparent consent must be given by someone acting with the authority of the landowner or one with rightful possession. *See Armintor v. Community Hosp.,* 659 S.W.2d 86, 90 (Tex.App.-Houston [14th Dist.] 1983, no writ); *see also Carr,* 893 S.W.2d at 623 (summary judgment on is-

sue of trespass was inappropriate unless defendants proved they received apparent consent of someone acting with authority of landowner). Consent to enter property may be manifested by the owner's conduct or by the condition of the land itself. *See Mellon Mortgage Co. v. Holder,* 5 S.W.3d 654, 671 (Tex.1999) (O'Neill, J., dissenting). Although situations exist "where a trespass has been tolerated for such a sufficient period of time that the public believes it has the 'permission' of the possessor to use the property," *Murphy v. Lower Neches Valley Auth.,* 529 S.W.2d 816, 820 (Tex.Civ.App.-Beaumont 1975), *rev'd on other grounds,* 536 S.W.2d 561 (Tex.1976), not every tolerance of an intrusion will imply an owner's consent to enter the land. *See Gonzalez v. Broussard,* 274 S.W.2d 737, 738 (Tex.Civ.App.-San Antonio 1954, writ ref'd n.r.e.). Consent to enter will only be implied if the owner (i) has actual knowledge that people have been entering the land and (ii) fails to take reasonable steps to prevent or discourage those persons from entering the land. *See Murphy,* 529 S.W.2d at 820; *City of El Paso v. Zarate,* 917 S.W.2d 326, 329 (Tex.App.-El Paso 1996, no writ). Further, an owner need not take steps to evict known trespassers when doing so would be unduly burdensome or futile. *See Mellon Mortgage Co.,* 5 S.W.3d at 672 (O'Neill, J., dissenting).

■ In its motion for summary judgment, Hooters claimed GMRI consented to the use of its parking spaces because GMRI did not tow cars or require people to move their cars. GMRI disagrees and relies on Palmer's affidavit in which she states she (i) told Hooters's representatives before the restaurant opened that the north parking spaces were solely for The Olive Garden patrons, (ii) attempted to convince Hooters to keep their employees and patrons out of the parking spots, (iii) complained to Stalker who, in turn, wrote Hooters and asked them to rectify the situation, (iv) continually complained to Hooters management and attempted to

find ways to cure the problem, (v) placed signs informing the public that the spaces were solely for The Olive Garden customers, and (vi) hired a valet service and later a security service to inform people that the parking spots were for The Olive Garden customers. Based on this evidence, we conclude a fact question exists on whether GMRI consented to the use of the parking lot by Hooters's patrons and employees. Because a fact question exists, summary judgment on this ground was improper.

### Reasonableness of Hooters's Actions

Finally, Hooters moved for summary judgment on the ground that "there is no genuine issue of material fact that Hooters's efforts to prevent its patrons from allegedly using The Olive Garden parking spaces were at all times reasonable under the facts and circumstances." Hooters's argument under this point is not a model of clarity. Nevertheless, we interpret Hooters's argument to address GMRI's negligence claim. Having reviewed the summary judgment evidence, we conclude summary judgment on this point was improper because a fact issue exists. In its response to Hooters's motion, GMRI attached excerpts from O'Hayre's deposition. In that deposition, O'Hayre testified that after he discovered the parking spaces at issue were not shared spaces and, in fact, were solely for The Olive Garden parking, he took no steps as Hooters's manager to alleviate or address the problem. This testimony controverts Hooters's claim and raises a fact issue on whether Hooters's efforts were "reasonable under the facts and circumstances." To the extent summary judgment was granted on this ground, we conclude the trial judge erred.

### VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE

In its final subissue, GMRI contends the trial judge erred in granting summary judgment on all of GMRI's claims. Under this section, GMRI argues Hooters did not move for summary judgment on GMRI's claims that Hooters violated sections 36.11 and 36.25 of the Texas Business and Commerce Code. Because the judge granted Hooters relief on causes of action not raised in its summary judgment motion, GMRI claims we must reverse and remand that portion of the summary judgment for further proceedings. We agree.

When, as here, a trial judge grants more relief than requested in a motion for summary judgment, we must reverse and remand those issues after addressing the merits of the properly presented claims. See Bandera Elec. Coop., Inc. v. Gilchrist, 946 S.W.2d 336, 337 (Tex. 1997); Postive Feed, Inc. v. Guthmann, 4 S.W.3d 879, 881 (Tex.App.-Houston [1 st Dist.] 1999, no pet.). Because Hooters did not move for summary judgment on the alleged violations of sections 36.11 and 36.25 of the Texas Business and Commerce Code, the trial judge erred in disposing of those issues. We sustain GMRI's seventh subissue.

Because Hooters failed to establish it was entitled to summary judgment under both rule 166a(c) and 166a(i) as a matter of law, we reverse the trial court's summary judgment and remand this cause for further proceedings.