Affirmed and Opinion filed May 30, 2002









Affirmed and Opinion filed May 30, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00200-CV

____________

 

MARK E. BURROUGHS, KENNETH R.
BURROUGHS, INSURANCE GENERAL MANAGEMENT CORPORATION and

INDEMNITY CASUALTY
AND PROPERTY, LTD., Appellants

 

V.

 

APS INTERNATIONAL, LTD., U.S. LEGAL
SUPPORT

and CHRISTOPHER
KAMINSKI, Appellees

 



 

On
Appeal from the 61st District Court

Harris County, Texas

Trial
Court Cause No. 98-29331

 



 

O P I N I O N

Appellants, Mark E. Burroughs (AMark@), Kenneth R. Burroughs (AKenneth@), Insurance General Management
Corporation (AIGM@), and Indemnity Casualty and
Property, Ltd. (AICP@), appeal from the trial court=s order granting summary judgment in
favor of Appellees, APS International, Ltd. (AAPS@), U.S. Legal Support (AU.S. Legal@), and Christopher Kaminski (AKaminski@). 
On appeal, appellants raise five points of error.  We affirm.








I.  FACTUAL AND
PROCEDURAL BACKGROUND

ICP insured a company called UFO Chuting
of Hawaii that was in the business of selling parasail boat rides.  Jennifer Drennan, a
UFO customer,  was allegedly injured
while parasailing.  As a result, Drennan instituted a lawsuit against UFO.  UFO gave notice of the Drennan
suit to ICP through IGM and submitted a claim under its policy.  ICP denied UFO=s claim.  UFO eventually settled the Drennan suit and filed its own lawsuit in an Hawaiian court
against appellants in this case.  UFO
retained APS to serve process on appellants, and APS subcontracted with U.S.
Legal to effectuate service. 

On November 13, 1997, after the time period for filing an
answer had passed, UFO moved for a default judgment.  Appellants contacted the Hawaiian court on
November 24, 1997, and filed an answer shortly thereafter.  In May, 1998, UFO again moved for a default
judgment.  Appellants made a special
appearance at the hearing on the motion, but filed nothing in opposition to UFO=s motion.  At appellants= request, the Hawaiian court granted
a thirty-day continuance.  Appellants
never filed a response, and the trial court granted UFO=s motion for default judgment on
August 14, 1998.  Appellants did not seek
post-judgment relief in the Hawaiian court. 








Appellants filed the underlying lawsuit against appellees
asserting appellees committed fraud, violated the Texas Deceptive Trade
Practices Act (ADTPA@), and were negligent. 
Specifically, appellants assert they were never served with notice of
that lawsuit and appellees filed false affidavits in the Hawaiian court
alleging service had been completed. 
U.S. Legal and Kaminski filed a motion to dismiss for lack of
jurisdiction, and, in the alternative, a motion for summary judgment on the
grounds that appellants have no standing because there is no controversy
between the parties as U.S. Legal and Kaminski do not owe appellants a legal
duty.  They also asserted that there is
no evidence they made any representations to appellants that appellants relied
upon, and there is no evidence that appellants were consumers under the
DTPA.  APS also filed a motion to dismiss
and a motion for partial summary judgment urging the same grounds, and added
that there was no evidence appellants are entitled to an award of punitive
damages even if they prevail on the underlying claims.  The trial court granted both motions, and
this appeal ensued.




II. 
POINTS OF ERROR ON APPEAL

Appellants challenge each ground raised by appellees in their
summary judgment motions, which were the following: (1) appellants do not have
standing to assert a claim against appellees; (2) appellees do not owe a duty
to appellants; (3) there is no evidence regarding an essential element of
appellants= fraud claim; (4) there is no
evidence appellants are consumers under the DTPA; and (5) appellants are not
entitled to recover punitive damages from APS. 

III.  STANDARDS OF
REVIEW

A.  Traditional
Motion for Summary Judgment

The function of a summary judgment is not to deprive a
litigant of the right to a full hearing on the merits of any real issue of
fact, but rather to eliminate patently unmeritorious claims and untenable
defenses.  Gulbenkian
v. Penn, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).  Appellate courts review summary judgments
under the well established standards set forth in Nixon v. Mr. Property
Management Company, 690 S.W.2d 546, 548B49 (Tex. 1985).  The movant for summary judgment has the
burden of showing that there are no genuine issues of material fact and that it
is entitled to judgment as a matter of law. 
Id.  In deciding whether
there is a material disputed fact issue precluding summary judgment, evidence
favorable to the non‑movant will be taken as true.  Id. 
Every reasonable inference must be indulged in favor of the non‑movant
and any doubts resolved in its favor.  Id.








A defendant, as movant, is entitled to summary judgment if it
(1) disproves at least one element of each of the plaintiff=s theories of recovery, or (2) pleads
and conclusively establishes each essential element of an affirmative defense
thereby rebutting the plaintiff=s cause of action.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 679 (Tex. 1979). 




B.  No-Evidence
Motion for Summary Judgment

The standard of review for a no-evidence motion for summary judgment is
well settled.  Rule 166a(I) provides: 

After adequate time for discovery, a party without
presenting summary judgment evidence may move for summary judgment on the
ground that there is no evidence of one or more essential elements of a claim
or defense on which an adverse party would have the burden of proof at
trial.  The motion must state the
elements as to which there is no evidence. The court must grant the motion
unless the respondent produces summary judgment evidence raising a genuine
issue of material fact. 

 

Tex .R. Civ. P. 166a(I).  When
a motion is presented under Rule 166a(I) asserting there is no evidence of one
or more essential elements of the non-movant=s claims upon which the non-movant
would have the burden of proof at trial, the movant does not bear the burden of
establishing each element of its own claim or defense.  General Mills Restaurants v. Texas Wings, Inc.,
12 S.W.3d 827, 832 (Tex. App.CDallas 2000, no pet.); Lampasas v. Spring Ctr., Inc.,
988 S.W.2d 428, 432B33 (Tex. App.CHouston [14th Dist.] 1999, no pet.).  Rather, the burden shifts to the non-movant
to present enough evidence to be entitled to a trial, i.e., evidence that
raises a genuine fact issue on the challenged elements.  Tex.
R. Civ. P. 166a cmt.  If the non-movant is unable to provide enough
evidence, the trial judge must grant the motion.  General Mills, 12 S.W.3d at 832; Lampasas,
988 S.W.2d at 433.








Because a no-evidence summary judgment is essentially a
pretrial directed verdict, we apply the same legal sufficiency standard in
reviewing a no-evidence summary judgment as we apply in reviewing a directed
verdict.  General Mills, 12 S.W.3d
at 832B33; Roth v. FFP Operating
Partners, L.P., 994 S.W.2d 190, 195 (Tex. App.CAmarillo 1999, pet. denied); Jackson
v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex. App.CAustin 1998, no pet.). Thus, our task
as an appellate court is to determine whether the non-movant produced any
evidence of probative force to raise a fact issue on the material questions
presented.  General Mills, 12
S.W.3d at 833; Roth, 994 S.W.2d at 195; Jackson, 979 S.W.2d at
70.  We consider all the evidence in the
light most favorable to the party against whom the no‑evidence summary
judgment was rendered, disregarding all contrary evidence and inferences.  Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); General
Mills, 12 S.W.3d at 833.  A
no-evidence summary judgment is improperly granted if the non-movant presents
more than a scintilla of probative evidence to raise a genuine issue of
material fact. General Mills, 12 S.W.3d at 833.  More than a scintilla of evidence exists when
the evidence Arises to a level that would enable
reasonable and fair‑minded people to differ in their conclusions.@  Merrell Dow, 953 S.W.2d at 711.

When the trial court does not specify the ground upon which
it granted summary judgment, we must affirm the judgment if any of the movant=s theories with respect to the claim
are meritorious.  Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989).  

IV.  STANDING AND DUTY

Appellants assert the trial court erred in granting appellees= motion to dismiss and motion for
summary judgment on the grounds of standing and duty.  Appellees moved for summary judgment with
respect to standing and duty on the ground that a private process server does
not owe a duty to the person he was hired to serve.[1]  Appellants admit that the question of whether
a private process server is subject to liability to the person or entity they
are hired to serve for negligent performance of that function is a question of
first impression in Texas.  In support of
their position that appellees, as private process servers, owe them a duty,
appellants cite Marsh v. Hawkins, 437 P.2d 978 (Ariz. 1968), and section
85.021 of the Texas Local Government Code, and argue public policy reasons for
imposing a duty.  








In Marsh, an Arizona Court of Appeals held that a
private process server is subject to the same liability that is imposed by the
common law upon sheriffs when performing similar functions.  437 P.2d. at 980.  Under Arizona common law, a sheriff or
constable is subject to civil liability for filing a false affidavit reflecting
service of the petition on the defendant. 
Id. at 980.  Extending this
duty, the Marsh court held that a private process server may also be
held liable for negligence in making a false return as well as for willfully
making a false return.  Id. at
981.  This case, however, has no precedential value for this court.   See Penrod Drilling Corp. v.
Williams, 868 S.W.2d
294, 296 (Tex. 1993) (noting appellate courts in Texas are only obligated to
follow precedents from higher Texas courts and the United States Supreme
Court).  

Moreover, there is no similar historical basis in Texas for
establishing such a duty.  In Marsh,
the court extended a duty that was already recognized by common law.  We were unable to find the history of a
sheriff=s common law liability for negligent
service of process in Texas.  This may be
because Texas has had a statute addressing a sheriff=s liability since 1846.  See Acts 1846, 1st Leg. P. 265 ' 8. 
Hence, there apparently was no need for the common law to develop in
this area.    

Section 85.021 of the Local Government Code requires a
sheriff to execute and return all process that is directed to the sheriff, and
imposes liability for all damages sustained by a person by reason of his
failure to do so, or by his making a false return.  Tex.
Loc. Gov=t Code Ann. ' 85.021 (Vernon 1999).  Appellants argue  there is no reason for private process
servers to have any greater protection than sheriffs when they are performing
the same function.  Appellants explain
the Legislature=s silence regarding private process servers by suggesting
that, unlike private process servers, without this statute waiving liability
sheriffs would be immune under the doctrine of sovereign immunity.   However, appellants have not cited any
authority supporting their contention that this was the Legislature=s intent. 








Finally, appellants argue that, as a matter of public policy,
private process servers should be held to the same standard as sheriffs.  Appellants are requesting this court to
establish a new common law duty in Texas for private process servers,
subjecting them to liability in the event of a breach of that duty.  This duty would extend to any person
sustaining damages resulting from a breach of the duty by a private process
server.  There is no authority in the
jurisprudence of Texas supporting the imposition of such a duty.  It is not for an intermediate appellate court
to create new causes of action.  Simmons
Airlines v. Lagrotte, 50 S.W.3d 748 (Tex. App.CDallas 2001, pet. filed); Emscor Mfg. v. Alliance Ins. Group, 879
S.W.2d 894, 910 (Tex. App.CHouston [14th Dist.] 1994, writ denied); Bernard Johnson,
Inc. v. Continental Constructors, Inc., 630 S.W.2d 365, 375 (Tex. Civ. App.CAustin 1982, writ ref=d n.r.e.).  Accordingly, we decline to hold that a
private process server owes a duty to the person or entity to be served. 

We find the trial court did not err in granting appellees= motion for summary judgment on this
ground.  We overrule appellants= first and second points of error.

V.  FRAUD 

Appellants assert the trial court erred in granting summary
judgment as to their fraud claims. 
Appellees moved for summary judgment with respect to appellants= fraud claim on the basis that there
was no evidence appellees made any representations to appellants upon which
they relied to their detriment. 
Additionally, APS asserted there was no evidence that any alleged reliance
by appellants caused the entry of the default judgment against them.

In order to recover under a theory of fraud, a plaintiff must
show: (1)  the defendant made a material
representation that was false; (2) the defendant knew the representation was
false or made it recklessly as a positive assertion without any knowledge of
its truth; (3) the defendant intended to induce the plaintiff to act upon the
representation; and (4) the plaintiff actually and justifiably relied upon the
representation and suffered harm as a result. 
Ernst & Young, L.L.P. v. Pacific Mut.
Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001).  Only the first and third elements are
relevant for purposes of this appeal.








One who makes a fraudulent misrepresentation may be liable to
a third person, to whom the misrepresentation was not directly made, if the
person making the misrepresentation had intent or knowledge that it should be
exhibited or repeated to a third person and intended or had reason to expect
the third person would act or refrain from acting in reliance upon the
misrepresentation.  Ernst & Young,
51 S.W.3d at 578 (quoting Am. Indem. Co. v. Ernst
& Ernst, 106 S.W.2d 763, 765 (Tex. App.CWaco 1937, writ ref=d)); Texas Capital Securities,
Inc. v. J.D. Sandefer, III, 58 S.W.3d 760, 772
(quoting Restatement (Second) of Torts ' 531 (1976)).  In other words, the misrepresentation does
not have to be made directly to the particular person seeking relief.  Ernst & Young, 51 S.W.3d at
578.  It is sufficient to show that the
misrepresentation was intended or expected to reach the third person and was
made with the intent or expectation the third person would rely on it.  Id. 

Regarding the first factor, appellants contend appellees made
two material representations that were false. 
The first was made when appellees filed an affidavit with the Hawaiian
court which stated that appellants had been personally served with
process.  The second was made when
appellees represented to appellants that the time to file an answer began
running from the date of service. 
Regarding the third factor, appellants argue the trial court relied on
the false affidavits in entering the default judgment, and appellees initially
relied on the false information regarding their time to answer.

A.  The
Affidavits








Even assuming, arguendo, the
affidavits are false, appellants= claim for fraud based on the
affidavits fails.  Appellants did not
present a scintilla of evidence the affidavits were filed with the Hawaiian
court with an intention or expectation they would be relied upon by appellants.  Affidavits alleging service of process are
filed with the court in which a case is pending in order to inform the court
that the pleading has been served on the parties named therein.  They are generally not provided to the
parties on whom service was purportedly made, and appellants do not contend
these affidavits were provided to them in this case.  Therefore, appellants= argument that the alleged false
affidavits constitute the misrepresentations that were made to and relied upon
by appellants fails.

Furthermore, assuming appellants relied on the affidavits,
their claim for fraud cannot be based on them because they did not suffer harm
as a result of this reliance.  Appellants
allege they suffered a default judgment as a result of their reliance on the
affidavits.  However, the Hawaiian trial
court did not rely on the affidavits in entering the default judgment against
them.  This is abundantly clear from the
record.  The trial court gave appellants
additional time to file an answer and a response to the motion for default
judgment, and granted a continuance. 
Ultimately, in granting the default judgment the Hawaiian court stated: Aeven if your client had not been
properly served, they have not in good faith followed up on all of the
requirements that have been imposed upon them since November and December of
last year.  They have sat on the case.@ 
In addition, APS attached to its motion for summary judgment letters to
appellants from their local counsel in Hawaii. 
Appellants= counsel had repeatedly urged appellants that time was of the
essence.  Appellants= counsel ultimately terminated
representation of appellants because of appellants= failure to respond to his
correspondence. 

B.  Time to
Answer

Appellants cannot base their claim for fraud on appellees= allegedly false representation to
appellants regarding the time appellants had to file an answer because even if
appellants did rely on statements made by appellees, it was not to their
detriment.  As stated above, the Hawaiian
trial court was very clear when it granted the default judgment that it was not
due to appellants= filing a late answer. 
Rather, it was due to appellants= failure to meet the trial court=s other requirements and failure to
act in good faith.

Indulging every inference and resolving all doubts in
appellants= favor, we find the trial court did
not err in granting appellees= motion for summary judgment on this ground. We overrule appellants= third point of error. 








VI.  DTPA

Appellants argue it was error for the trial court to grant
summary judgment with respect to their DTPA claim.  In appellees= motions for summary judgment, they
asserted that appellants are not consumers within the meaning of the DTPA, vitiating
their DTPA cause of action.  

The DTPA prohibits A[f]alse,
misleading, or deceptive acts or practices in the conduct of any trade or
commerce . . . .@  Tex. Bus. & Com. Code ann. ' 17.46(a) (Vernon 1987).  To recover under the DTPA, a plaintiff must
establish that: (1) he was a consumer of the defendant=s goods or services; (2) the
defendant committed false, misleading, or deceptive acts in connection with the
lease or sale of goods or services; and (3) such acts were a producing cause of
actual damages to the plaintiff.  Brown
v. Bank of Galveston, N.A., 963 S.W.2d 511, 513 (Tex. 1998).

A Aconsumer@ is someone who seeks to purchase or lease goods or services.
Tex. Bus. & Com. Code  ann. ' 17.45(4) (Vernon Supp. 2002);  Arthur Andersen & Co. v. Perry Equip.
Corp., 945 S.W.2d 812, 815 (Tex. 1997). 
To qualify as a consumer, the plaintiff must satisfy two requirements:
(1) he must have sought or acquired the goods or services by purchase or lease;
and (2) the goods or services must form the basis of the complaint.  Vinson & Elkins v. Moran, 946
S.W.2d 381, 406B07 (Tex. App.CHouston [14th Dist.] 1997, writ dism=d by agr.);
Hand v. Dean Witter Reynolds, Inc., 889 S.W.2d 483, 496 (Tex. App.CHouston [14th Dist.] 1994, writ
denied) (citing Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535,
539 (Tex. 1981)).  The plaintiff,
however, need not establish contractual privity with
the defendant in a DTPA claim.  Amstadt v. United States Brass Corp., 919
S.W.2d 644, 649 (Tex. 1996).  








A party=s consumer status does not turn on whether there is a
contractual relationship with the defendant, but rather, it is determined by
the party=s relationship to the
transaction.  Perry Equip. Corp.,
945 S.W.2d at 815.   Consequently, a
person does not have to be a direct purchaser in order to qualify as a consumer
under the DTPA.  Lukasik v. San
Antonio Blue Haven Pools, 23 S.W.3d 394, 401 (Tex. App.CSan Antonio 2000, no pet.) (citations
omitted).  In limited circumstances, a
third party may qualify as a consumer if the transaction was specifically
intended to benefit the third party and the good or service was rendered to
benefit the third party.  Id.  Whether a plaintiff is a consumer is a
question of law.  Wright v. Gundersen, 956 S.W.2d 43, 47 (Tex. App.CHouston [14th Dist.] 1996, no writ).

Appellants= only argument in support of this point of error is that Athey were related to the transaction
of service of process@ and their relationship to the transaction Aprovides a sufficient legal basis@ to qualify appellants as
consumers.  Although, the authority cited
by appellants does support their contention that third parties can qualify as
consumers under the DTPA if the good or service was purchased or acquired
primarily for the third person=s benefit, appellants fail to explain how the services
purchased in this case were acquired primarily for their benefit qualifying
them as consumers under the DTPA. 
Furthermore, the cases cited by appellants in which third persons have
been held to be consumers are distinguishable from this case.  

For example, in Perry Equipment Company, Perry
was investigating the purchase of Maloney Pipeline Services.  945 S.W.2d at 814.  As a condition of sale, Perry required that
Maloney provide audited financial statements. 
Id. at 815.  Arthur
Andersen was hired for this purpose, and the firm was aware of the reason it
was hired by Maloney.  Id.  Perry relied on the accounting done by Arthur
Andersen in its decision to purchase Maloney. 
Id.  Perry was held to be a
consumer because Arthur Andersen knew Perry required the audit, and knew Perry
was going to rely on it.  Id. 








This case is more akin to Aincidental beneficiaries@ cases.  For example, in Vinson & Elkins v.
Moran, this court held that beneficiaries of an estate are not consumers
under the DTPA because a law firm=s services are not obtained primarily
for the beneficiaries= benefit.  946 S.W.2d
at 408.  A testator=s purpose in hiring a firm is to
assist in the orderly administration of the estate, which, in turn, will
benefit beneficiaries.  Id.  Any benefit received by the beneficiaries,
however, is merely incidental to the main purpose.  Id.

Here, UFO hired appellees to effectuate service so UFO could fulfil its obligation to serve process on the opposing
side, appellants.  If UFO had not used
due diligence in serving appellants, UFO=s claim eventually would have been
barred by the statute of limitations.[2]  UFO=s primary purpose in hiring
appellees, therefore, was so UFO could proceed with its claim against
appellants.  Appellants were incidental
beneficiaries to this transaction, and not primary beneficiaries.  Therefore, appellants do not qualify as
consumers under the DTPA.

Indulging every inference and resolving all doubts in
appellants= favor, we find the trial court did
not err in granting appellees= motion for summary judgment on this ground.  We overrule appellants= fourth point of error.

VII.  PUNITIVE DAMAGES

Appellants assert the trial court erred in granting APS= motion for summary judgment
regarding the issue of punitive damages. 
In its motion, APS asserted there was no evidence appellants were
entitled to punitive damages even if they could prevail on their causes of
action.  Having found there is no
evidence to support appellants= underlying causes of action, we find the trial court did not
err in granting appellees= motion for summary judgment on this ground.  Accordingly, we overrule appellants= fifth point of error.








VIII.  CONCLUSION

Because we have overruled all of appellants= points of error, we affirm the order
of the trial court granting appellees= motions for summary judgment.

 

 

/s/        John S. Anderson

Justice

 

 

Judgment rendered
and Opinion filed May 30, 2002.

Panel consists of
Justices Anderson, Hudson, and Frost.

Publish C Tex.
R. App. P. 47.3(b).

 











[1]  More
precisely, appellees moved for summary judgment on the ground that the trial
court lacked subject matter jurisdiction. 
Appellees asserted that standing is a component of subject matter
jurisdiction and appellants lacked standing because there was no real
controversy between the parties, i.e., appellees do not owe appellants a
duty.   Resolution of appellants= first and second points of error, therefore, hinges
on whether appellees owe a duty to appellants. 






[2]  The
statute of limitations is not tolled by the mere filing of a lawsuit.  Li v. Univ. of Texas Health Sci. Ctr. at Houston, 984 S.W.2d 647 (Tex. App.CHouston
[14th Dist.] 1998, writ denied).  In
order to toll the statute of limitations from the date a lawsuit is filed to
the date of service, due diligence must be used in procuring service.  Id. 
Therefore, appellants not only had a duty to file suit within the time
prescribed by law, but also to exercise due diligence in seeing that process
was served on the necessary parties.  Klein
v. Dimock, 705 S.W.2d 405, 407 (Tex. App.CFort
Worth 1986, writ. ref=d n.r.e.).  If
necessary parties are not joined within the statute of limitations, the cause
of action will be barred.  Id.