COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-064-CV

 

 

BILLY DON GIFFORD                                                            APPELLANT

 

                                                      V.

 

DON DAVIS AUTO, INC. D/B/A                                               APPELLEES

DON DAVIS TOYOTA AND 

TOYOTA MOTOR CREDIT
CORPORATION

 

                                                  ------------

 

           FROM COUNTY
COURT AT LAW NO. 2 OF TARRANT COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------

This appeal arises out of a used car
purchase.  The trial court granted
summary judgment against the purchaser. 
We affirm in part and reverse and remand in part.

Background








On February 21, 2004, appellant Billy Don Gifford
purchased a 2001 Toyota Tacoma from appellee Don Davis Auto, Inc. d/b/a Don
Davis Toyota (ADon Davis@).  Don Davis used a form retail installment
sales contract for this transaction. 
Appellee Toyota Motor Credit Corporation (AToyota
Motor Credit@) financed Gifford=s purchase
through a separate installment contract.

The contract between Gifford and Don Davis
included a charge for $1,265.00 for an extended warranty to be provided by AToyota
C.@  The contract also contained a charge for
$47.44 for a Adealer=s
inventory tax paid to seller.@  Finally, the contract included a charge for
$1,766.42 for credit life and credit disability insurance.  At some point after Gifford took possession
of the car, he became unable to pay. 
Toyota Motor Credit began collection efforts, which culminated in repossession.

Gifford sued Don Davis and Toyota Motor Credit
asserting claims against Don Davis for fraud, violations of the Texas Finance
Code and Deceptive Trade Practices Act (ADTPA@), and
breach of fiduciary duty and claims against Toyota Motor Credit for unfair debt
collection practices, wrongful repossession, conversion, and slander of
credit.  Appellees filed a joint motion
for summary judgment on both traditional and no-evidence grounds.  Without specifying the basis for its ruling,
the trial court granted summary judgment for Appellees.  This appeal ensued.








Standard
of Review

We review a summary judgment de
novo.[1]  The movant for a traditional summary judgment
has the burden of showing that there is no genuine issue of material fact and
that the movant is entitled to summary judgment as a matter of law.[2]  A defendant who conclusively negates at least
one essential element of a cause of action is entitled to summary judgment on
that claim.[3]  In deciding whether there is a genuine issue
of material fact, we take all evidence favorable to the nonmovant as true and
make all reasonable inferences in the nonmovant=s favor.[4]








A no-evidence motion for summary judgment places
the burden on the nonmovant to present summary judgment evidence raising a
genuine issue of material fact as to any challenged elements.[5]  If the nonmovant presents more than a
scintilla of evidence to raise a genuine issue of material fact, summary
judgment should be denied.[6]  More than a scintilla of evidence exists when
the evidence Arises to a level that would
enable reasonable and fair-minded people to differ in their conclusions.@[7]  In determining whether the nonmovant has met
this burden, we consider the evidence in the light most favorable to the
nonmovant.[8]

Analysis

In a single point of error, Gifford contends that
the trial court erred by granting summary judgment for Appellees on all his
claims.  We will consider each claim in
turn.

Fraud

Gifford alleged that Don Davis fraudulently
induced him to enter into the retail installment sales contract.  Gifford=s fraud
claims are predicated on two alleged misrepresentations in the installment
contract, specifically, that Don Davis misrepresented the nature of the dealer=s
inventory tax and included an itemized charge for an extended warranty that Don
Davis never provided or intended to provide.








Fraud B Dealer=s
Inventory Tax

Gifford asserts that Don Davis=s
inclusion of a Adealer=s
inventory tax@ as an itemized charge in the
installment contract amounts to a fraudulent misrepresentation because it
misled him into thinking that a Adealer=s
inventory tax@ is assessed at the time of the
sale and that he, not Don Davis, owed this Atax.@  To assess this claim, we must construe Texas
statutes regarding the items that may be included as itemized charges in a
motor vehicle retail installment contract and whether the Adealer=s
inventory tax@ is such an item.

In Texas, sales of motor vehicles by installment
contracts are subject to the requirements in chapter 348 of the Texas Finance
Code.[9]  Section 348.102(a)(7) mandates that an
installment contract for the sale of a motor vehicle Amust
contain . . . each itemized charge.@[10]  Section 348.005(2) authorizes a retail seller
of a motor vehicle to include Aany
taxes@ as
itemized charges in the amount financed in a retail installment sales contract.[11]  Accordingly, if the Adealer=s
inventory tax@ is a tax within the meaning of Aany
taxes@ as used
in section 348.005(2), a retail seller is authorized to include it as an
itemized charge in an installment contract.








Subchapter B of Chapter 23 of the Texas Tax Code
contains provisions for appraisal of a dealer=s
inventory for ad valorem tax purposes.[12]  Section 23.121 specifies how the value of a
dealer=s motor
vehicle inventory is to be calculated on January 1 of each year for assessment
of ad valorem taxes on that inventory.[13]  The value of a motor vehicle dealer=s
inventory on January 1 is one-twelfth of the dealer=s total
annual sales volume for the prior tax year.[14]








The tax code requires each dealer to maintain an
escrow account with the local tax assessor-collector to accumulate funds to
apply toward the dealer=s next-year tax liability on its
vehicle inventory.[15]  Each month the dealer deposits an amount
equal to the total unit property tax values assigned to all vehicles sold from
the dealer=s inventory in the prior month.[16]  The dealer assigns a unit property tax to
each vehicle at the time of sale based on the formula in sections 23.122(a)(12)
and (b).[17]  The unit property tax reflects the amount
that the dealer must deposit in the inventory tax escrow account for the sale
of a particular vehicle.[18]  The escrowed funds are then applied as
prepayment of property taxes to be levied against the dealer=s motor
vehicle inventory value on January 1 of the subsequent year.[19]  The dealer may not withdraw any funds
deposited to the escrow account.[20]  The assessor-collector is required to
distribute all the escrowed funds to the relevant taxing units no later than
February 15.[21]

Gifford contends that the Avehicle
inventory tax@ is not a Atax@ that
can be included as an itemized charge in an installment contract under section
348.005(2) of the finance code.  It is
instead, Gifford argues, a Adeposit@ toward
the dealer=s future tax liability.  Accordingly, Gifford contends, by including
this deposit in the installment contract as an itemized charge for a Adealer=s
inventory tax,@ Don Davis fraudulently misled
him into believing that he owed a tax when he bought the car, when in fact he
did not, and that Don Davis was going to pay that Atax@ at the
time of purchase, when in fact all Don Davis did was make a deposit into an
escrow account.








Don Davis argues in response that the dealer=s
inventory tax is in fact a tax that retail sellers are authorized to include as
an itemized charge in installment contracts and that Don Davis=s
inclusion of this tax as an itemized charge was not a misrepresentation.  We agree with Don Davis.

More than one hundred years ago, the Supreme
Court of Texas explained that the Texas Constitution authorizes the legislature
to provide for the manner of assessment and payment of ad valorem property
taxes and that the value of different types of property could and probably must
be assessed by different methods:

[T]axation by a uniform
rule does not necessarily demand that there should be the same mode of assessment
for every species of property, without regard to any classification.  An assessment, in the sense of a valuation of
the property of the taxpayer for the purpose of determining the proportion of
tax to be paid, should, it is true, be uniform in its mode, to the extent that
the property is assessed according to its true value in money.  But it would not follow that different
classes of property may not be valued for taxation by different officers and
boards, and by different modes and agencies. . . . 

 








Our Constitution, after
declaring that Ataxation shall be equal
and uniform,@ and that property shall
be taxed in proportion to its value (evidently alluding to ad valorem taxes),
adds in the same sentence: AWhich [value] shall be ascertained as may be
prescribed by law.@  This would seem to leave the Legislature free
to adopt the mode of ascertaining the value of any class of property by such
method as it might deem best.  If such
was the intention, we think it a wise provision.  Property is so various and ascertainment of
its value in some cases is so difficult that no mode of such ascertainment
absolutely uniform in every respect could effect the important end of
equalizing the burden upon all property owners alike.[22]

 

Here, the legislature has chosen to assess ad valorem taxes against motor
vehicle dealer inventories by way of a prepayment based on the unit property
tax value assigned to each unit at the time of sale.[23]  The fact that this is how the tax is assessed
and collected does not make it any less a tax than other ad valorem taxes.








In construing the finance and tax code provisions
at issue here, we find it significant that in 1994, shortly after the
legislature promulgated what is now section 23.122 of the tax code, the Finance
Commission, the agency charged with enforcing the finance code, approved the
opinion of the Texas Consumer Credit Commissioner that the Aunit
property tax value@ is Aencompassed
in the term >any taxes= as used
in [section 23.122]@ and that Athe unit
property tax value could be included in the cash price or shown as an itemized
charge [in an installment contract] . . . .@[24]  We believe this construction is reasonable
and reflects the legislature=s
intent.  Accordingly, we conclude that
the Aunit
property tax value@ is a tax pursuant to the tax
code and that the finance code authorizes dealers to include the amount of the
unit property tax value for a particular vehicle at the time of sale as an Aitemized
charge.@

The question remains, however, whether Gifford
has raised a fact issue as to whether Don Davis misrepresented the nature of
the tax such that Gifford was misled into believing that he, not Don Davis,
owed the tax.  The installment contract
included as an itemized charge an amount for a Adealer=s
inventory tax paid to seller.@  Gifford provided an affidavit stating that
this language caused him to believe that he, not Don Davis, owed this tax.  But Gifford=s
subjective belief about what the words Adealer=s
inventory tax paid to seller@ mean is
not dispositive of whether those words amounted to a misrepresentation.








The Office of the Consumer Credit Commissioner
promulgated regulations detailing what dealers are required to include in motor
vehicle installment sales contract. 
These regulations state that such a contract must have the following
disclosures:

(4)     Itemized charges not included in the cash
price, as required by Texas Finance Code, '348.102(a)(7). Itemized charges may include, but
are not limited to, the following charges as applicable: . . .

(C)    Dealer=s inventory tax . . . .[25]

 

The commissioner=s office has also published in
the regulations a model Amotor vehicle retail installment
sales contract.@[26]  This model contract includes the A[d]ealer=s
inventory tax@ as one of the A[o]ther
charges including amounts paid to others on [buyer=s]
behalf@ that
must be listed in the itemization of the amount financed.[27]








Don Davis=s
installment contract is taken almost verbatim from the model contract.  The only modification made by Don Davis is
that its contract references a ADealer=s
Inventory Tax Paid to Seller.@  [Emphasis added.]  The addition of APaid to
Seller@ conveys
that, unlike other itemized charges that may be Aamounts
paid to others on [buyer=s] behalf,@ the
dealer=s
inventory tax is paid to Don Davis. 
Accordingly, Don Davis did not misrepresent the nature of the dealer=s
inventory tax or that Gifford was obligated to pay the tax as anything but a
charged amount payable to Don Davis. 
Thus, as a matter of law, Don Davis made no misrepresentation regarding
the dealer=s inventory tax, and the trial
court did not err by granting summary judgment for Don Davis on Gifford=s fraud
claim regarding the dealer=s
inventory tax.

Fraud B
Extended Warranty

Gifford also based a fraud claim on the itemized
charge for an extended warranty.  In his
affidavit, Gifford states Don Davis told him that $1,265.00 was being paid to AToyota
C.@ for an
extended warranty.  Gifford claims that
this statement is fraudulent because, Gifford alleges, Don Davis never actually
paid AToyota
C.@ for the
extended warranty.  Because appellees=
no-evidence summary judgment motion asserted that there is no evidence of any
misrepresentation by Don Davis, Gifford had the burden to produce some evidence
demonstrating that Don Davis never paid AToyota
C.@ for the
extended warranty.[28]








The only evidence Gifford presented to support
his claim that AToyota C.@ was
never paid was Don Davis=s responses to Gifford=s
requests for production.  Specifically,
Gifford asked Don Davis to produce any documents Arelating
to the amount and payment of other charges delineated in the Retail Installment
Sales Contract including the amounts paid on behalf of purchaser.@  After objecting to this request, Don Davis
answered, ANone, except as previously made
available or in Plaintiff=s possession.@

Gifford asserts that this answer is some evidence
that Don Davis has no documents showing payment to AToyota
C.@ for the
warranty which, Gifford argues, raises a fact issue as to whether such a
payment was made.  We disagree.  At most, this answer is evidence only that
Don Davis has no documents reflecting payment for the extended warranty other
than those already made available to Gifford or in Gifford=s
possession.  Gifford presented no
evidence that he reviewed all documents made available by Don Davis and none
show payment to AToyota C.@, nor
does he state that he has no such documents in his possession.  In the absence of other evidence to support
this claim, we cannot say that Gifford has presented more than a scintilla of
evidence to raise a genuine issue of material fact.  We, therefore, conclude that the trial court
properly granted summary judgment for Appellees on Gifford=s fraud
claim based on the extended warranty.








Unaddressed
Causes of Action

Summary judgment cannot be
granted except on the grounds expressly presented in the motion.[29]  In determining whether grounds are expressly
presented, reliance may not be placed on briefs or summary judgment evidence.[30]  The purpose of this requirement is to provide
the opposing party with adequate information for opposing the motion and to
define the issues or points for the purpose of summary judgment.[31]








Gifford asserted claims under chapter 349 of the
finance code, which creates private causes of action for certain alleged
finance code violations.[32]  To the extent Appellees sought summary
judgment as to these claims, their summary judgment motion addressed alleged
violations based solely on inclusion of the Adealer=s
inventory tax@ as an itemized charge in the
installment contract.  For the reasons
stated above as to Gifford=s fraud
claims, summary judgment was proper as to any claims that Don Davis violated
the finance code based on allegedly misrepresenting the nature of the dealer=s
inventory tax charge.

However, Gifford=s
petition raised other alleged finance code violations.  Because Appellees failed to address these
other allegations in their summary judgment motion, the trial court erred by
granting summary judgment on Gifford=s other
finance code violation claims.[33]

Gifford also sought an order under section 17.50
of the DTPA permanently enjoining Don Davis from engaging in deceptive conduct
like that alleged generally in his petition. 
Because Don Davis=s summary judgment motion did
not address all of the allegations of deception or misrepresentation raised by
Gifford=s
petition, summary judgment as to Gifford=s DTPA
claim was improper.[34]








Finally, Gifford asserted claims for wrongful
repossession, conversion, unfair debt collections, and slander of credit.  Appellees failed to address any of these
claims in their summary judgment motion. 
Accordingly, the trial court erred by granting summary judgment as to
these claims.[35]

Conclusion

The trial court properly granted summary judgment
on Gifford=s claims that Don Davis
misrepresented the nature of the dealer=s
inventory tax and misrepresented payment of the charge for an extended
warranty.  However, the trial court
improperly granted final summary judgment on the remainder of Gifford=s claims
because Appellees= motion for summary judgment failed
to address them.

Accordingly, we affirm the trial court=s
judgment in part, reverse the trial court=s
judgment in part, and remand this cause to the trial court for further proceedings
consistent with this opinion.

 

 

JOHN
CAYCE

CHIEF JUSTICE

PANEL:  CAYCE, C.J.; DAUPHINOT
and GARDNER, JJ.

DELIVERED:  December 11, 2008











[1]Valence Operating Co. v.
Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).





[2]Nixon v. Mr. Prop. Mgmt.
Co., 690
S.W.2d 546, 548B49 (Tex. 1985).





[3]IHS Cedars Treatment Ctr.
of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).





[4]Am. Tobacco Co. v.
Grinnell,
951 S.W.2d 420, 425 (Tex. 1997).





[5]See Tex. R. Civ. P. 166a(i);
see also Espalin v. Children=s Med. Ctr. of Dallas, 27 S.W.3d 675, 682B83 (Tex. App.CDallas 2000, no pet.).





[6]Espalin, 27 S.W.3d at 683.





[7]Merrill Dow Pharms. v.
Havner,
953 S.W.2d 706, 711 (Tex. 1997) (citations omitted).





[8]Gen. Mills Rests., Inc.
v. Tex. Wings, Inc., 12 S.W.3d 827, 833 (Tex. App.CDallas 2000, no pet.).





[9]Tex. Fin. Code Ann. '' 348.001B.518 (Vernon 2006).





[10]Id. ' 348.102(a)(7).





[11]Id. ' 348.005(2).





[12]Tex. Tax Code Ann. '' 23.121B.124 (Vernon 2008).





[13]Id. ' 23.121.





[14]Id. ' 23.121(b).





[15]Id. ' 23.122.





[16]Id. ' 23.122(c).





[17]Id. '' 23.122(a)(12), (b).





[18]Id. ' 23.122(b).





[19]Id. ' 23.122(c).





[20]Id. ' 23.122(d).





[21]Id. ' 23.122(k).





[22]Mo., Kan. & Tex. Ry.
Co. of Tex. v. Shannon, 100 Tex. 379, 393B94, 100 S.W. 138, 143B44 (1907); see also
State v. Wynne, 134 Tex. 455, 468B69, 133 S.W.2d 951, 958 (Tex. 1939) (AThe burden of levying
taxes rests on the Legislature, and that body has [the] plenary power of
prescribing the mode of taxation to raise revenue; and the specification of
certain objects and subject of taxation in the Constitution does not prevent it
from passing laws requiring other subjects or objects to be taxed, unless
expressly prohibited by the Constitution.@).





[23]Tex. Tax Code ' 23.122(c).





[24]19 Tex. Reg. 655 (Jan.
24, 1994) (summary of interpretation); see also Mid-Century Ins. Co. of Tex.
v. Ademaj, 243 S.W.3d 618, 623 (Tex. 2007) (construction of statute by
administrative agency charged with its enforcement is entitled to serious
consideration, so long as construction is reasonable and does not contradict
plain language of statute).





[25]7 Tex. Admin. Code ' 84.804(4)(C).





[26]Id. ' 84.809(b).





[27]Id.





[28]See Tex. R. Civ. P. 166a(i).





[29]Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 204 (Tex. 2002); Sci. Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 912 (Tex. 1997).





[30]McConnell v. Southside
Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993).





[31]Westchester Fire Ins. Co.
v. Alvarez,
576 S.W.2d 771, 772 (Tex. 1978); Camden Mach. & Tool, Inc. v. Cascade
Co., 870 S.W.2d 304, 309 (Tex. App.CFort Worth 1993, no writ).





[32]Tex. Fin. Code Ann. '' 349.001B.503 (Vernon 2006).





[33]See Johnson, 73 S.W.3d at 204; Martinez,
941 S.W.2d at 912.





[34]See Johnson, 73 S.W.3d at 204; Martinez,
941 S.W.2d at 912.  We express no opinion
on whether any of Gifford=s allegations other than
the alleged misrepresentation about the nature of the dealer=s inventory tax could
support an injunction under section 17.50 of the DTPA.





[35]See Johnson, 73 S.W.3d at 204; Martinez,
941 S.W.2d at 912.