AN COLLISION CENTER OF ADDI-
SON, INC. d/b/a Bankston Colli-
sion Center, Appellant,

v.

The TOWN OF ADDISON, Appellee.

No. 05–09–00272–CV.

Court of Appeals of Texas,
Dallas.

April 12, 2010.

Bryan D. Perkins, Amanda Maxine In-
abnett, Gibson, McClure, Wallace & Dan-
iels, LLP, Dallas, TX, for Appellant.

Robert F. Maris, Maris & Lanier, P.C.,
Dallas, TX, for Appellee.

Before Justices MOSELY,
FITZGERALD and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Appellant AN Collision Center of Addison, Inc. d/b/a Bankston Collision Center appeals the summary judgment granted appellee The Town of Addison. In two issues, Collision Center contends the trial court erred in granting Addison summary judgment on the affirmative defense of limitations to Collision Center's request for abatement of a nuisance and on Collision Center's claim that Addison intentionally diverted rainwater off its property and onto Collision Center's property. We affirm the trial court's judgment.

## Background

The Addison Airport was constructed in 1956 and 1957 by a third-party. Addison purchased the Airport in 1976. In 1997, Collision Center purchased real property located on Lindbergh Drive that lies adjacent to the southern end of the Airport on which Collision Center operates a vehicle paint and body repair shop. Since at least 1992, including the period of Collision Center's ownership, the property has flooded every time there is a hard rain lasting more than fifteen minutes.

Collision Center filed suit against Addison [1] alleging that its premises were flooded on eight occasions between January 3, 2005 and March 18, 2008. In its petition, Collision Center alleged Addison diverted or impounded rainwater from the Airport onto Collision Center's property. Collision Center alleged that because Addison's diversion or impounding of water was intentional and with knowledge that the flooding of Collision Center's property would occur, Collision Center's damages are the result of a taking in violation of article I, section 17 of the Texas Constitution. See TEX. CONST. art. I, § 17 ("No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person."). Collision Center further alleged Addison's diversion of water is a compensable nuisance under article I, section 17 of the Texas Constitution. Collision Center requested the trial court abate the continuing nuisance in the form of injunctive relief under chapter 65 of the civil practice and remedies code. See Gen. Mills Rests., Inc. v. Texas Wings, Inc., 12 S.W.3d 827, 834 (Tex.App.-Dallas 2000, no pet.) (party may be entitled to abatement of nuisance or damages if not susceptible to abatement).

Addison filed a traditional and no-evidence motion for summary judgment on Collision Center's claims.[2] Without stat-

---

1. Collision Center settled claims against Dallas Area Rapid Transit (DART), Regional Rail Right-of-Way Company, Explorer Pipeline Company, and Sprint Communications Company, L.P., and dismissed those defendants with prejudice, leaving Addison as the sole remaining defendant.

2. Addison moved for a traditional summary judgment on five grounds: (1) Collision Center does not have standing to sue, because the cause of action alleged by Collision Center accrued before Collision Center owned the property, and that cause of action was not assigned to Collision Center by the prior owner; (2) because the causes of action accrued more than fifteen years ago, Collision Center's claims are barred by the two-year statute of limitations; (3) Collision Center's request to abate a continuing nuisance is barred by the statute of limitations because Collision Center is seeking barred damages, not injunctive relief; (4) Collision Center's allegations of a new injury are barred by the statute of limitations because the new injury does not change the nature of the injury that is barred by limitations; and (5) to the extent Collision Center's allegations involve Addison's negligence, those claims are barred by the doctrine of sovereign immunity.

Addison moved for a no-evidence summary judgment on three grounds, asserting Collision Center could not produce more than a

ing the ground or grounds, the trial court granted Addison summary judgment as to all of Collision Center's affirmative claims for relief. Collision Center appealed.

## Standard of Review

The standard for reviewing a traditional summary judgment is well established. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment must show the plaintiff has no cause of action. A defendant may meet this burden by either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *See Gen. Mills*, 12 S.W.3d at 832. A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982); *Ling v. BDA & K Bus. Servs., Inc.*, 261 S.W.3d 341, 345 (Tex.App.-Dallas 2008, no pet.). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *See Kang v. Hyundai Corp.*, 992 S.W.2d 499, 501 (Tex. App.-Dallas 1999, no pet.)

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* Tex.R. Civ. P. 166a(i); *Gen. Mills*, 12 S.W.3d at 832–33. Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* at 833. When analyzing both traditional and no-evidence summary judgments, we consider the evidence

scintilla of evidence raising a genuine issue of material fact that (1) Addison performed any intentional act that damaged Collision Center, (2) any alleged "new injury" changed the

in the light most favorable to the nonmovant. *See Nixon*, 690 S.W.2d at 549 (traditional summary judgment); *Gen. Mills*, 12 S.W.3d at 833 (no-evidence summary judgment).

Where, as here, the trial court's order granting summary judgment does not state the ground or grounds relied on for its ruling, the summary judgment will be affirmed on appeal if any of the theories advanced in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

## Discussion

On appeal, Collision Center has challenged only the summary judgment granted on its request for abatement of the alleged nuisance. *See Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex.App.-Dallas 2009, pet. denied) (if appellant does not challenge each possible ground on which summary judgment could have been granted, summary judgment upheld on unchallenged ground or grounds). Therefore, we consider whether any ground asserted by Addison supports the summary judgment on Collision Center's request for abatement of the alleged nuisance.

We begin our analysis with Collision Center's second issue, in which it contends the trial court improperly granted Addison's no-evidence summary judgment because there was evidence in the record to create a genuine issue of material fact that Addison intentionally diverted rainwater off its property and onto Collision Center's property with knowledge that flooding would result, was resulting, or was substantially certain to result.

nature of the alleged nuisance, and (3) any alleged improvement caused any identifiable injury to Collision Center.

██ Addison is a governmental subdivision. A nuisance claim can only be brought against a governmental entity if that nuisance rises to the level of a constitutional taking or unless governmental immunity is specifically waived by the Texas Tort Claims Act. See City of Dallas v. Jennings, 142 S.W.3d 310, 315–16 (Tex. 2004); see also Gen. Servs. Comm'n v. Little–Tex Insulation Co., 39 S.W.3d 591, 598 (Tex.2001) (to establish takings claim, claimant must prove governmental entity intentionally performed certain acts that resulted in "taking" of property for public use). Negligence contributing to damage to property does not constitute a taking. City of Tyler v. Likes, 962 S.W.2d 489, 505 (Tex.1997). Collision Center cannot maintain a suit against Addison for any negligent nuisance, or for an abatement thereof, and Collision Center acknowledges it is not suing Addison for negligence.

On appeal, Addison contends the trial court properly granted summary judgment as to Collision Center's request to abate a continuing nuisance because Collision Center did not produce a scintilla of evidence showing that Addison performed any intentional act that damaged Collision Center. Collision Center acknowledges that in order to refute the motion for summary judgment on its claim that Addison created a nuisance in violation of article I, section 17 of the Texas Constitution, the burden is on Collision Center to produce sufficient evidence that Addison performed an intentional act that resulted in the flooding. See Jennings, 142 S.W.3d at 314.

██ Collision Center argues it produced more than scintilla of evidence of intention-

al, unlawful acts by Addison. Collision Center asserts the summary judgment record contains evidence that Addison has caused flood waters to flow onto Collision Center's property; Addison has knowledge that the development and alteration of the natural landscape of the Airport has caused the flooding on Collision Center's property[3]; and Addison has knowledge that the flooding of Collision Center's property is substantially certain to continue unless Addison acts to alleviate its diversion of rainwater. Collision Center asserts this satisfies its obligation to produce evidence of intentional conduct for purposes of Collision Center's nuisance claim under the Texas Constitution.

Collision Center has not alleged, nor produced any summary judgment evidence of, an act by Addison that caused the flooding on Collision Center's property. Collision Center's summary judgment evidence with regard to an intentional act that caused flooding of its property is the original construction of the Airport, which occurred in 1956 and 1957, before Addison purchased the Airport in 1976. Collision Center's expert, Jim Koch, was asked by Collision Center to perform an analysis of flooding conditions occurring on Collision Center's property. Koch did not offer any test results that indicate flooding on Collision Center's property occurred for any reason other than the construction of the Airport or that show any action of Addison increased the flooding of Collision Center's property.

Collision Center contends there is summary judgment evidence that Addison maintained and operated the airport with knowledge that flooding of Collision Cen-

---

**3.** Collision Center contends the Airport landscape was graded in such a manner that surface water flows off of that property and onto Collision Center's property. Collision Center also contends the development of the Airport included roadways, taxiways, and buildings and a significant amount of impervious ground cover in the form of asphalt, concrete, and buildings, thereby preventing rainwater falling on the Airport from infiltrating into the soil and increasing the water runoff.

ter's property was an inevitable result. It is uncontested that Addison has maintained and operated the Airport since it purchased the Airport in 1976. However, Collision Center has produced no evidence that the maintenance and operation of the airport caused or causes the flooding of Collision Center's property.

We disagree with Collision Center's assertion that language of *City of Houston v. Renault, Inc.*, 431 S.W.2d 322 (Tex.1968) "strongly suggests" that Addison's continued maintenance of its property, with knowledge of the flooding to Collision Center's property, was sufficient to satisfy the intentional act requirement. In *Renault*, the plaintiffs complained of the city's maintenance of a roadway and existing culvert, which caused flooding of the plaintiffs' property. *Id.* at 323–24. The roadway was constructed by Harris County prior to annexation of the area by the city of Houston. *Id.* at 323. The Texas Supreme Court ruled in favor of the city, concluding the flooding was unintentional. *Id.* at 325. It did not appear the culvert was altered by the city, and the city maintained the road only by repairing and improving the road for public travel. *Id.* at 325–26. The plaintiffs in *Renault* showed no knowledge on the part of the city that flooding was resulting or was substantially certain to result from the maintenance of the road with the existing culvert. *Id.* at 326. Here, Collision Center produced no evidence that Addison had knowledge that flooding of Collision Center's property was resulting or substantially certain to result from maintenance or operation of the Airport.[4]

Collision Center also relies on *Tarrant Regional Water District v. Gragg*, 151 S.W.3d 546 (Tex.2004) in support of its argument regarding Addison's maintenance and operation of the Airport. In *Gragg*, the issue was whether the evidence was legally sufficient to support the trial court's determination that construction and operation of the Tarrant Regional Water District's Richland–Chambers Reservoir caused a change in flooding characteristics that damaged the Gragg Ranch. *Id.* at 548–49. Although the Texas Supreme Court affirmed an inverse condemnation claim against the Water District, *Gragg* is distinguishable from the case at bar. Unlike Addison's lack of involvement with the construction of the airport, in *Gragg* the water district was responsible for the design and construction of the Richland–Chambers Reservoir. *Id.* at 550. Further, in *Gragg*, there was evidence that the reservoir's operation—flood gate releases—changed the character of the flooding which had occurred prior to construction of the reservoir. *Id.* at 555.

Collision Center cites summary judgment evidence in the record that Addison has been aware of the flooding of the Collision Center's property for over twenty years. A drainage channel known as the Lindbergh Channel is located adjacent to the south edge of Collision Center's property. The Lindbergh Channel is not within the property owned by Addison. Since the development of Addison Airport, the watershed at the southern end of Addison Airport exceeds what the Lindbergh Channel can accommodate and the rainwater exceeding the capacity of Lindbergh Chan-

4. In response to Addison's motion for summary judgment, Collision Center stated that in the two years prior to Collision Center filing suit, Addison undertook numerous improvement projects at the Airport, such as replacement of a portion of chain link fence, adding a mowing strip along the replaced fencing, and regrading a swale at the end of the Airport where storm water ponded. However, Collision Center produced no evidence that the improvements to the Airport affected the flow of water off the Airport. Addison produced affidavit summary judgment evidence to the contrary.

nel floods Collision Center's property.[5] Neither Collision Center nor its expert, Koch, make any allegation that the flooding of Collision Center's property occurred by means other than water overflowing the Lindbergh Channel, which is owned by DART.

Collision Center argues that despite Addison's knowledge that the flooding was occurring since the mid–1980s, Addison failed to make any changes to the Airport, the Lindbergh Channel, or otherwise to alleviate the flooding to Collision Center's property. Collision Center points to proposed plans to alleviate flooding and Addison's failure to pursue any of them. In the mid–1980s, Addison hired an engineer to perform a conceptual study of drainage situations in Addison, including the channel adjacent to Collision Center's property. Collision Center also relies on evidence that Addison procured civil construction plans in February 2001 for Lindbergh Channel drainage improvement. Nancy Cline, Addison's Director of Public Works and also an expert for Addison, acknowledged that Addison terminated the plan for the drainage channel improvements even though Addison knew that by terminating the project, Collision Center's property would continue to experience flood problems.

The evidence of Addison's failure to implement a flood control plan shows, at best, a failure to correct a problem that Addison knew existed. The alleged failure to act cannot be construed to be an intentional act or acts resulting in damage to or taking of Collision Center's property. Absent an intentional act resulting in the taking of private property for public use,

claims for inverse condemnation and non-negligent nuisance under the takings clause of the Texas Constitution are barred by governmental immunity. *See Bell v. City of Dallas,* 146 S.W.3d 819, 825 (Tex.App.-Dallas 2004, no pet.). A failure to act, including a failure to take corrective measures, is not enough to rise to the level of taking; it is merely an allegation of negligent conduct. *Coyne v. Kaufman County,* 144 S.W.3d 129, 135 (Tex.App.-Eastland 2004, no pet.) (county's failure to widen roads, pave roads, and enforce traffic regulations not intentional act establishing taking and nuisance claims). The Texas Supreme Court has repeatedly held that acts of mere negligence will not support a taking claim. *Gragg,* 151 S.W.3d at 554; *Jennings,* 142 S.W.3d at 313; *Likes,* 962 S.W.2d at 505. "[W]e strive to avoid what would be anomalous result if the State, an entity otherwise generally entitled to immunity for negligence, were subject to liability for something less than intentional behavior." *Gragg,* 151 S.W.3d at 554.

Collision Center has not produced a scintilla of summary judgment evidence raising a genuine issue of material fact as to an intentional action taken by Addison that caused the alleged nuisance of flooding Collision Center's property. *See State v. Hale,* 136 Tex. 29, 36, 146 S.W.2d 731, 736 (Tex.1941) (true test is, did State intentionally perform certain acts in exercise of its lawful authority which resulted in taking or damaging of plaintiff's property, and which acts were proximate cause of taking or damaging of such property). We conclude the trial court properly granted summary judgment on Collision Center's

---

5. According to Collision Center, storm water runoff from Addison Airport is conveyed through storm pipes under Lindbergh Drive, where it then flows toward the Lindbergh Channel. Lindbergh Drive, a roadway constructed by Addison in 1981, also drains toward the Lindbergh Channel. There is no evidence in the record that construction of Lindbergh Drive increased the flow of water runoff from the Airport.

request for abatement of a nuisance. We overrule Collision Center's second issue.

In its first issue, Collision Center contends the trial court improperly granted summary judgment on the request to abate a continuing nuisance because the statute of limitations does not bar a suit to abate a continuing nuisance. Having concluded in our disposition of Collision Center's second issue that Addison established its entitlement to a no-evidence summary judgment on Collision Center's request for abatement of a nuisance, it is not necessary to address Collision Center's first issue. *See* TEX.R.APP. P. 47.1 (opinion need only address issues "necessary to final disposition of the appeal").

We affirm the trial court's judgment.