**ALL METALS FABRICATING, INC., Appellant,**

v.

**FOSTER GENERAL CONTRACTING, INC., Appellee.**

No. 05–08–00911–CV.

Court of Appeals of Texas, Dallas.

Feb. 23, 2011.

See also 338 S.W.3d 557.

Timothy D. Zeiger, Brian P. Shaw, Shackelford, Melton & McKinley, Dallas, TX, for Appellant.

Bryan D. Wendt, John Holman Barr, Burt Barr & Associates, L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, BRIDGES, and MURPHY.

## OPINION

Opinion By Justice BRIDGES.

Appellant All Metals Fabricating, Inc. brought suit against appellee Foster General Contracting, Inc. for breach of contract, breach of express warranty, and breach of implied warranty in connection with the construction of a building. The trial court granted Foster's motions for summary judgment on all of All Metals's claims. In three issues, All Metals complains the trial court erred in granting Foster's motions because Foster did not establish it was entitled to judgment as a matter of law. Because All Metals raised genuine issues of material fact on its breach of contract claim and its breach of express warranty claim, we reverse the trial court's judgment on those claims and remand the cause. We affirm the trial court's judgment on All Metals's claim for breach of implied warranty.

### BACKGROUND

In its operative petition, All Metals alleges Foster constructed a building for All Metals's full-service metal fabrication facility in Allen, Texas. All Metals asserts that since the completion of the building in 2000, it has experienced significant problems because the soil beneath the foundation of the building is unstable.[1] All Metals contends that in addition to cracking in the walls and floors of the building, the foundation movement has required expensive recalibration of All Metals's manufac-

turing equipment. All Metals relies on a contract entitled "Standard Form of Agreement Between Owner and Construction Manager where the Construction Manager is also the Constructor." Under this contract, BEBDT[2]-Realty, Ltd. is identified as the Owner, Foster is identified as the Construction Manager, and the Project is identified as All Metals Fabricating, Inc. The copy of the contract in the summary judgment record is signed by Michael Foster as the President of Foster General Contracting, Inc., but is not signed on behalf of BEBDT.

Foster filed several motions for summary judgment. At issue here are its motions filed on November 8, 2005 (the First Motion), and January 4, 2007 (the Second Motion). The grounds for the First Motion were that Foster had no contractual duty to ensure that work performed by others on the project was completed in accordance with the contract's specifications. Foster's First Motion concludes:

> Under the terms of the contract between Foster and All Metals, Foster was obligated to rely on the specifications provided and had no responsibility to ensure performance by others in accordance with specifications. Therefore, defects in design or specification or subcontractor performance cannot constitute a breach of contract or warranties by Foster. Foster cannot be held liable for defects in the Building as a matter of

---

1. It is undisputed that the soil work on the project was performed by Ramer Concrete, Inc., another defendant in the trial court. The trial court granted Ramer's motion for summary judgment against All Metals, and severed the causes of action against Ramer. All Metals's appeal of the summary judgment for Ramer was decided by the Court of Appeals for the Eighth District of Texas at El Paso on March 12, 2009. *See All Metals*

*Fabricating, Inc. v. Ramer Concrete, Inc.*, 338 S.W.3d 557 (Tex.App.-El Paso 2009, no pet.). In *Ramer Concrete*, the trial court's summary judgment in favor of Ramer was reversed and the case was remanded to the trial court.

2. The contract recites the Owner as BEBT–Realty, LTD. All Metals notes the correct name of the entity is BEBDT–Realty, Ltd., and Foster did not seek summary judgment based on this error.

law and summary judgment should be granted in favor of Foster with respect to All Metals' cause of action against Foster.

The Second Motion, designated as both a traditional and a no-evidence motion, repeated the grounds from the First Motion and added challenges to each cause of action pleaded by All Metals. Regarding All Metals's breach of contract claim, Foster asserted: (i) there is no evidence of any contract between All Metals and Foster and All Metals has no standing to assert a breach of contract claim because BEBDT, not All Metals, is the party to the contract; (ii) there is no evidence that Foster breached the contract because Foster was not contractually obligated to provide any warranty or guaranty of the work, was not responsible for the work of the subcontractors, and was only required to use its best efforts, reasonable skill, and judgment; (iii) the contract was never signed by either All Metals or BEBDT; and (iv) even if a contract exists, All Metals is not a third-party beneficiary to it. Similarly, as to All Metals's breach of express warranty claim, Foster asserted: (i) there is no evidence of an express warranty from Foster to All Metals; (ii) All Metals has no standing to assert a claim even if there was an express warranty because All Metals is not the owner of the building and there was no contractual relationship between All Metals and Foster; (iii) there is no evidence of a breach of any warranty, and no evidence that any breach was the cause of any damage to All Metals. Foster asserted that the terms of the contract precluded any claims of any oral agreements between the parties. As to the claim for implied warranty, Foster asserted that no such warranty exists under Texas law. Finally, Foster argued All Metals has no standing to recover any damages related to defects in construction because it is not the owner of the building.

All Metals filed a response to each of Foster's motions, and offered supporting evidence. All Metals cited to the language of the contract itself as well as relying on expert testimony to establish the existence of the defects and their likely cause. To rebut Foster's claim that All Metals was not a party to the contract and therefore had no standing, All Metals offered affidavits of William Thrailkill, principal of both BEBDT and All Metals. In an affidavit dated January 24, 2007, Thrailkill testified that BEBDT had assigned "all of BEBDT's claims arising out of the construction of the Building" to All Metals, effective June 10, 2004. A copy of the assignment was attached to the affidavit.

In its reply in support of the Second Motion, Foster attached new summary judgment proof to rebut Thrailkill's affidavit, asserting that "All Metals Fabricating, Inc." was dissolved in 1979, and that assumed name certificates for Thrailkill All Metals Fabricating, Inc. doing business as All Metals Fabricating, Inc. had expired in 1999. Foster did not request leave to file this additional evidence. Also in its reply, Foster objected to Thrailkill's affidavit and to the assignment. By written order of February 4, 2007, the trial court denied Foster's objections to All Metals's summary judgment evidence, specifically denying the objection to Thrailkill's Affidavit of January 24, 2007, and its attachments including the assignment.

On February 2, 2007, after the summary judgment hearing, All Metals filed its motion to allow a trial amendment and attached a second supplemental petition. The supplemental petition alleged that BEBDT had assigned its claims arising out of the construction of the building to All Metals. The trial court signed a written order on February 20, 2007, denying All Metals's motion. Also on February 2,

2007, All Metals filed a supplemental brief, objecting to Foster's late-filed summary judgment evidence regarding All Metals's assumed name status. There is no written order in the record on All Metals's objection to Foster's evidence.

On February 11, 2007, the trial court signed an order granting Foster's motions for summary judgment. No grounds were stated in the order. On the same day, the trial court signed a judgment reciting that Foster's motions for summary judgment had been granted and ordering that All Metals take nothing against Foster.

### STANDARDS OF REVIEW

The standard for reviewing a traditional summary judgment is well-established. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment must show the plaintiff has no cause of action. A defendant may meet this burden by disproving at least one essential element of each theory of recovery or by conclusively proving all elements of an affirmative defense. *See Gen. Mills Rests., Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 193 (Tex.App.-Dallas 2010, no pet.). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *Id.*

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX.R. CIV. P. 166a(i); *Gen. Mills Rests., Inc.*, 12 S.W.3d at 832–33. We must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Gen. Mills Rests., Inc.*, 12 S.W.3d at 833. When analyzing traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *See Nixon*, 690 S.W.2d at 549; *Gen. Mills Rests., Inc.*, 12 S.W.3d at 833.

Where, as here, the trial court's order granting summary judgment does not state the ground or grounds relied on for its ruling, the summary judgment will be affirmed on appeal if any of the theories advanced in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

### DISCUSSION

In its first two issues on appeal, All Metals contends the trial court erred in granting Foster's motions for summary judgment. Foster's summary judgment motions raised three questions. First, Foster challenged All Metals's status as a party to the contract. Second, Foster contended it did not breach the contract or make any express warranties. Third, Foster asserted there is no cause of action available to All Metals for breach of implied warranty. We discuss these questions in turn.

### A. Contracting parties

■ All Metals contends there is evidence to raise a fact issue whether it was a party to the contract. Foster challenges All Metals's status as a party to the contract in several ways. Foster argues that the contract is not signed at all on behalf of the owner of the project. The recitals show BEBDT as the owner, but the signature line for the owner is blank. Foster also argues that BEBDT, not All Metals, is the party to the contract. Foster further argues that All Metals was dissolved in 1979, and could not enter into a contract,

accept an assignment, or institute an action for breach of contract. Foster also contends that All Metals is not a third-party beneficiary to the contract.

All Metals offered summary judgment evidence that it entered into the contract with Foster. Thrailkill testified he was the president of All Metals, and in 1999, he hired Foster to build All Metals's new metal fabricating facility in Allen, Texas. Thrailkill also identified the contract signed by Foster as "the agreement upon which Foster undertook to construct the Building," and stated that although he believes he signed the contract, he has been unable to locate a copy of the contract with his signature. He further testified that he performed under the contract by paying for the construction of the building. In addition to Thrailkill's testimony, Michael Foster, President of Foster, submitted an affidavit in support of the First Motion in which he testified:

> 3. "All Metals Fabricating, Inc. ("All Metals") contracted with Foster General Contracting, Inc. ("Foster") to serve as the construction manager on the construction of a building located in Allen, Texas ("Building Project"). . . .
>
> 5. Attached as Exhibit A to Foster General Contracting, Inc.'s Motion for Summary Judgment is a true and correct copy of the Standard Form of Agreement between Owner and Construction Manager which was entered into between All Metals and Foster.

Foster also filed a counterclaim against All Metals alleging All Metals "breached the Agreement by failing to pay" Foster for services it rendered "pursuant to their agreement."

 With its summary judgment response, All Metals attached an assignment by BEBDT to All Metals of all claims arising from the construction of the building. Foster contends the trial court should not have considered the assignment because All Metals did not plead and prove the assignment and the trial court denied All Metals's motion to supplement its pleadings. When affidavits or other summary judgment evidence disclose "facts which render the position of the moving party untenable," the trial court may consider such evidence "regardless of defects which may exist in the pleading of the opposite party." *See Womack v. Allstate Ins. Co.,* 156 Tex. 467, 296 S.W.2d 233, 237 (1956); *see also Roberts v. Haltom City,* 543 S.W.2d 75, 77 (Tex.1976) (following *Womack*). Here, the trial court could consider All Metals's evidence regarding the assignment for summary judgment purposes even though the assignment was not alleged in All Metals's pleadings.

 In a cross-point, Foster complains the trial court erred when it overruled Foster's objections to the assignment and accompanying affidavit. Evidentiary rulings are committed to the trial court's sound discretion. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.*

In the affidavit, Thrailkill stated he had personal knowledge of the facts stated, and they were true and correct. He explained the relationships among the corporate entities of which he is a principal. He testified that "BEBDT contracted, and paid, for the construction of a full-service metal fabrication facility at its property" located in Allen, Texas. He testified that since its completion, the building has been used by All Metals to conduct its metal fabrication business. He identified the contract under which Foster undertook to construct the building, and testified he believed he signed it but has not been able to locate a copy of the contract with his sig-

nature. He testified about performance of the contract, and the defects discovered in the construction of the building. He stated, "Since both BEBDT and All Metals have suffered damages as a result of the Building's construction defects, BEBDT and All Metals agreed to assign all of BEBDT's claims arising out of the construction of the Building to All Metals." He identified the assignment, stated its effective date was June 10, 2004, and attached a copy.

We conclude that the trial court did not abuse its discretion in overruling Foster's objections to Thrailkill's affidavit. The affidavit included statements of fact. *Cf. Selz v. Friendly Chevrolet, Ltd.,* 152 S.W.3d 833, 837 (Tex.App.-Dallas 2005, no pet.) (conclusory statements in affidavits are not proper summary judgment evidence and may not be used to raise issue of fact). Issues raised by Foster regarding the timing, signature, and date of the assignment may be relevant to Thrailkill's credibility or the weight to be given the evidence, but do not preclude admission of the evidence. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965) (if summary judgment motion involves credibility of affiants or weight to be given evidence, motion should not be granted). Viewing the evidence in the light most favorable to the party opposing the motion for summary judgment, and resolving doubts against the movant, Thrailkill's affidavit is sufficient to raise a fact issue regarding whether All Metals was a party to the contract. *See id.* (explaining movant's burden of proof for summary judgment). We overrule Foster's cross-point.

■ All Metals's third issue is also related to the question whether All Metals was a party to the contract. In its third issue, All Metals contends that "[i]f the trial court granted Foster's second motion for summary judgment based on grounds and evidence presented for the first time in Foster's reply, filed the day before the hearing, the trial court erred." We agree. Although the trial court did not rule on All Metals's objections to Foster's late-filed evidence regarding the dissolution of All Metals and the expiration of its assumed name certificate, the trial court could not have considered any new ground for summary judgment included only in the reply and not in the summary judgment motion. *Sanders v. Capitol Area Council,* 930 S.W.2d 905, 911 (Tex.App.-Austin 1996, no writ) (in absence of nonmovant's consent, movant may not raise a new ground for summary judgment in a reply to nonmovant's response). While Foster correctly points out that there is no deadline in the rules of civil procedure for the filing of a reply, the court in *Sanders* concluded that to permit new grounds to be asserted in a reply would undercut the requirements of Texas Rule of Civil Procedure 166a(c):

> The purpose of the time requirements in rule 166a(c), to give the nonmovant notice of all claims that may be summarily disposed of and the specific grounds on which the movant relies, would be severely undercut if a movant's "reply" in which new independent grounds were presented could be treated as an amended motion for summary judgment.... We believe ... that allowing arguments made in the movant's reply to be considered, after the fact, as independent grounds for summary judgment would subvert the orderly process contemplated by rule 166a and put the nonmovant to an unfair burden.

*Sanders,* 930 S.W.2d at 911. We sustain All Metals's third issue.

We conclude All Metals introduced at least enough evidence to create a fact issue whether there was a contract with Foster to construct the building and whether All

Metals was a party to that contract. *See also Ramer Concrete*, 338 S.W.3d at 560 ("The evidence showing that All Metals was assigned the claims of the property owner negated Ramer's summary judgment contentions that All Metals had no claims against any party in the case.").

## B. Breach of contract and breach of express warranty

Next we consider Foster's argument that summary judgment was proper because Foster did not breach the contract or make any express warranties. Foster argues that its duties under the contract were only the more limited duties of a "Construction Manager," not the duties of a "General Contractor." Foster argues it did not breach any duty of a Construction Manager. Foster maintains there is an irreconcilable conflict in the language of the contract documents regarding the standard of care required. Foster argues the lower standard applies, and there is no evidence its conduct fell below that standard. All Metals counters that the contract provisions can and should be harmonized in determining Foster's obligations.

We agree with All Metals that there was some evidence to raise a fact issue as to whether Foster breached the contract. The parties agree that the contract consisted of both the "Standard Form of Agreement Between Owner and Construction Manager where the Construction Manager is also the Constructor" (SFA), and Document A201 of the American Institute of Architects, "General Conditions of the Contract for Construction" (AIA A201). AIA A201 is incorporated by reference in the SFA:

1.2 GENERAL CONDITIONS
For the Construction Phase, the General Conditions of the Contract shall be the 1997 Edition of AIA Document A201, General Conditions of the Contract for Construction, which is incorporated herein by reference and which shall apply except as specifically noted in this Agreement. . . .

Paragraph 1.2 also includes the statement, "If anything in AIA Document A201 is inconsistent with or is modified by this Agreement, this Agreement shall govern."

■ The parties' dispute arises regarding Foster's duties under the terms of the contract. Foster argues that as Construction Manager, its duties were limited. Foster quotes Article 2 of the SFA, "The Construction Manager shall perform the services described in this Article," and argues that its contractual duties were limited to the duties listed in Article 2. Foster also relies on Paragraph 1.1 setting out the parties' relationship:

1.1 RELATIONSHIP OF PARTIES
The Construction Manager accepts the relationship of trust and confidence established with the Owner by this Agreement, and covenants with the owner to furnish the Construction Manager's reasonable skill and judgment and to cooperate with the Architect in furthering the interests of the Owner. The Construction Manager shall furnish construction administration and management services and use the Construction Manager's best efforts to perform the Project in an expeditious and economical manner consistent with the interests of the Owner. . . .

Relying on this paragraph, Foster argues the standard of care for its performance of its contractual duties is "reasonable skill and judgment" and "best efforts." Foster maintains that any higher standard of care contained in AIA A201 is inconsistent with the SFA, and the SFA governs.

■ All Metals counters that Foster not only was serving as the Construction Manager, but also was serving as both the

Architect and the Contractor under the contract. A plain reading of the contract's terms supports All Metals's argument. The cover page of the SFA provides, "The Owner and Construction Manager agree as set forth below. NOTE: REFERENCES TO WORD ARCHITECT REFERS TO CONSTRUCTION MANAGER FOR THIS PROJECT." Paragraph 1.2 of the SFA, quoted in part above, concludes with the sentence, "The term "Contractor" as used in AIA Document A201 shall mean the Construction Manager." Among the numerous provisions of AIA A201 on which All Metals relies is section 3.3, which provides in part,

§ 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES

§ 3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters

. . . .

§ 3.3.2 The Contractor shall be responsible to Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

§ 3.3.2 The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

In addition, All Metals relies on the warranty provision set forth in section 3.5 of AIA A201:

§ 3.5 WARRANTY

§ 3.5.1 The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents. . . .

Under the terms of the contract, Foster acted not only as Construction Manager but also as Contractor and Architect. In construing a written contract, we must examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). Reading the contract as a whole, Foster not only had duties as Construction Manager which it was to perform with reasonable skill and judgment, but also certain enumerated duties and responsibilities as Contractor and as Architect, including responsibility for the work. We do not agree with Foster that the language of the contract creates an irreconcilable conflict. *See Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex.1983) (when provisions of contract appear to conflict, they should be harmonized if possible to reflect intentions of parties). Foster could perform its duties as Construction Manager using reasonable skill and judgment and best efforts, and also serve as Contractor and as Architect, performing those duties consistent with the express terms of the contract.

■ All Metals raised a genuine issue of material fact whether Foster breached its contractual duties and whether the breach was the cause of damage to All Metals. In its summary judgment responses, All Metals included the affidavit of Sadik Al–Mu-

sawe, a civil and environmental engineer licensed in Texas who conducted tests on the site both before and after All Metals's building was constructed. His reports of October 9, 1998 and October 9, 2002, are included in the record, as well as the results of field and laboratory testing related to his work at the site. In his affidavit, after describing his work at the site and stating his opinion of the cause of the building's foundation problems, Al–Musawe concluded:

> The failure to ensure against settlement and heaving at the Property ... constitutes a failure to complete the pre-construction dirtwork, including placement of fill materials, in a good and workmanlike manner, assuming the definition of good and workmanlike manner is the quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging the work....

All Metals also relied on the testimony of Kerry S. Lee, another expert witness, who testified about the causes of the problems with the building. Lee concluded that "lack of subgrade preparation" and "site conditions during construction" were some of the causes of the "cumulative movements in the subgrade" causing "distress at this site." Considering the language of the contract and Al–Musawe's and Lee's testimony in the light most favorable to All Metals, we conclude All Metals raised a genuine issue of material fact regarding whether Foster breached the contract, whether Foster breached an express warranty, and whether those breaches were the cause of damage to All Metals.

## C. Breach of implied warranty

Next we address whether summary judgment was proper on All Metals's claim for breach of implied warranty. All Metals argues "no Texas court holds that implied warranties do not and cannot exist for commercial construction," and there are public policy reasons for extending an implied warranty that services will be performed in a good and workmanlike manner to commercial construction. We disagree that the law of implied warranty should be extended here. As we explained in *Anthony Equipment Corp. v. Irwin Steel Erectors, Inc.,* 115 S.W.3d 191, 209 (Tex.App.-Dallas 2003, pet. dism'd):

> An implied warranty that services will be performed in a good and workmanlike manner may arise under the common law when public policy mandates. Public policy does not justify imposing an implied warranty for service transactions in the absence of a demonstrated, compelling need. There is no compelling need for an implied warranty when other adequate remedies are available to the consumer. Remedies may not be adequate when, for example, privity or reliance requirements or the difficulty of assigning responsibility prevent a wronged consumer from obtaining redress. [Citations omitted]

We conclude as we did in *Anthony Equipment* that "[n]o such obstacles are present under the circumstances of this case." *Id.* An adequate remedy exists for All Metals if it establishes its claims for breach of contract and breach of express warranty. The trial court did not err in granting summary judgment for Foster on this ground. We overrule the portions of All Metals's first and second issues that challenge the trial court's judgment on All Metals's claim for breach of implied warranty.

## CONCLUSION

We sustain All Metals's first and second issues in part, sustain All Metals's third

issue, and overrule Foster's cross-point. We affirm the trial court's summary judgment in favor of Foster on All Metals's claim for breach of implied warranty. Concluding there are genuine issues of material fact precluding summary judgment on All Metals's claims for breach of contract and breach of express warranty, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings regarding those claims.