REVERSED in part, REMANDED, AFFIRM in part Opinion Filed September 18, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-10-01471-CV

### ART & FRAME DIRECT, INC., Appellant

### V.

### DALLAS MARKET CENTER OPERATING, L.P. AND WACHOVIA BANK, N.A., Appellees

On Appeal from the 160th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-09-09516-H

# OPINION

Before Justices Murphy, Fillmore, and Myers
Opinion By Justice Murphy

Art & Frame Direct, Inc. (Art & Frame) appeals the summary judgment entered in favor of Dallas Market Center Operating, L.P., allowing the garnishment of funds transferred pursuant to a zero balance account agreement from Art & Frame's master account to satisfy Dallas Market's judgment against Art & Frame Direct/Timeless Industries Georgia, Inc. (Debtor). We reverse and remand that portion of the final judgment.

## BACKGROUND

Art & Frame had a zero balance account agreement with Wachovia Bank, N.A. that allowed the bank to transfer funds from Art & Frame's master account number 2488 to cover checks drawn

on designated zero balance accounts. One of those accounts numbered 5706 was Debtor's business account.

Dallas Market obtained a default judgment against Debtor on June 3, 2009. Not long after the judgment became final, Dallas Market filed an application for post-judgment writ of garnishment against Wachovia on July 30, 2009. Wachovia was served with the writ the next day, making its answer due August 24, 2009. Wachovia filed an answer on August 17, stating that it believed account 5706 under the title "Timeless Industries" might be Debtor's account. It also identified three additional accounts held by Art & Frame with a separate tax identification number from the one designated for account 5706. Wachovia stated that one of those accounts, numbered 2488, was the parent account to account 5706. As part of its answer, Wachovia sought clarification of whether Dallas Market contended Art & Frame was the judgment debtor and requested that the court determine the issue. Wachovia set aside the sum of $252,111.55 in a general ledger account in response to the first writ, which amount was comprised in part of $240,000 Wachovia transferred from a line of credit connected to Art & Frame's account 2488.

Debtor did not contest the garnishment and did not appear in the proceeding. Art & Frame filed a plea in intervention on August 21, stating that Wachovia had impounded its accounts and seeking dissolution of the writ of garnishment. It filed a separate motion to dissolve the writ.

Upon receipt of Art & Frame's intervention, Dallas Market immediately sought accelerated discovery and continuance of the hearing on Art & Frame's motion to dissolve. It also filed a second application for writ of garnishment on August 31, naming Art & Frame as a third party holding funds nominally for Debtor. That writ was served on Wachovia on September 1.

The trial court dissolved the first writ of garnishment as to Art & Frame's account 2248 on September 10, 2009, but denied the motion to dissolve with respect to account 5706 and the

$252,111.55 set aside and held by Wachovia. After some discovery, Dallas Market and Wachovia both filed traditional motions for summary judgment. Dallas Market claimed entitlement to the $252,111.55. Wachovia claimed entitlement to its attorney's fees incurred in responding to the writs of garnishment. The trial court granted Wachovia's motion in part, awarding it attorney's fees of $26,077.75 to be paid from the funds set aside by Wachovia in response to the writs of garnishment. The trial court also granted Dallas Market's motion in part, awarding it the sum of $226,033.80 remaining after deduction of the attorney's fees award from the original $252,111.55 held by Wachovia.

Art & Frame appeals from the final judgment entered in favor of Dallas Market on September 29, 2010, which incorporated the prior summary-judgment rulings. Although Wachovia is named as an appellee, it has not appeared in this case. The trial court's ruling on Wachovia's motion is not in issue.

## DISCUSSION

Art & Frame presents one issue on appeal—whether the trial court erred in granting Dallas Market's summary-judgment motion. It argues the trial court erred by awarding funds from an account "not of the judgment Debtor." It describes Art & Frame and Debtor as two separate and distinct entities and argues Dallas Market's pleadings do not allege alter ego, single business enterprise, or any claims that would allow the trial court to treat the entities as one and the same. It claims the summary-judgment evidence shows that at the times the writs of garnishment were served, Debtor had no funds in Art & Frame's accounts and Art & Frame was not holding funds belonging to Debtor. It asserts the zero balance agreement allowed only for transfer of funds from Art & Frame's master account 2488 to cover "checks" drawn on Debtor's account 5706.

Dallas Market contends the zero balance account relationship inextricably linked Debtor's account 5706 and Art & Frame's master account 2488 and that Debtor had unrestricted access to all funds on deposit. It argues the two accounts operated as one and the same.

## STANDARD OF REVIEW

We review Dallas Market's summary judgment under established standards. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We review de novo whether Dallas Market proved its right to prevail as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied). As the moving party, Dallas Market had the burden to demonstrate that no genuine issues of material fact exist and it was entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548. A matter is conclusively established if ordinary minds cannot differ on the conclusion to be drawn from the evidence. *AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 193 (Tex. App.—Dallas 2010, no pet.). We consider evidence favorable to Art & Frame, the non-movant, as true. *Nixon*, 690 S.W.2d at 548–49. We also indulge every reasonable inference and resolve any doubts in favor of Art & Frame. *Id.*

## APPLICABLE LAW

Garnishment is a statutory proceeding that allows the property, money, or credits of a debtor in the possession of another to be applied to the payment of a debt. *See* TEX. CIV. PRAC. & REM. CODE §§ 63.001–.008 (West 2008); TEX. R. CIV. P. 657–79; *Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992) (per curiam); *Beggs v. Fite*, 106 S.W.2d 1039, 1042 (Tex. 1937). Funds placed with a bank ordinarily become general deposits, which create a debtor-creditor relationship between the bank and its depositor. *Sunbelt*, 824 S.W.2d at 558; *Citizens Nat'l Bank of Dallas v. Hill*, 505 S.W.2d 246, 248 (Tex. 1974). A garnishee bank is not indebted to a judgment debtor unless some form of deposit agreement creates that relationship between the bank and the

judgment debtor. *Sunbelt*, 824 S.W.2d at 558. A deposit may be reached by a garnishor only if the debtor is the true owner of the deposit. *See Frankfurt's Tex. Inv. Corp. v. Trinity Sav. & Loan Ass'n*, 414 S.W.2d 190, 194 (Tex. Civ. App.—Dallas 1967, writ ref'd n.r.e.).

A garnishee may contest its liability under a writ of garnishment. Specifically, it has the same rights it would have if sued by the debtor instead of the debtor's creditor. *Beggs*, 106 S.W.2d at 1042; *Wilkens & Lange v. Christian*, 223 S.W. 253, 255 (Tex. Civ. App.—Galveston 1919, writ dism'd w.o.j.). Either the garnishee, through its answer, or the garnishor, through traverse of that answer, may raise the issue of ownership or title to the property or funds garnished. *See Thompson v. Fulton Bag & Cotton Mills*, 286 S.W.2d 411, 414 (Tex. 1956). A person other than the garnishee or debtor who claims ownership of the funds held by the garnishee must intervene to contest ownership of the garnished funds. *See Putman & Putman, Inc. v. Capitol Warehouse, Inc.*, 775 S.W.2d 460, 463 (Tex. App.—Austin 1989, writ denied); *see generally* TEX. R. CIV. P. 60 (any party may intervene, subject to being stricken for sufficient cause). The intervenor must allege and prove its ownership of the funds. *Putman*, 775 S.W.2d at 463.

When a dispute over ownership or title of the funds arises, jurisdiction to determine whether the garnishee holds funds or property of the debtor remains vested in the court that issued the writ of garnishment. *Wrigley v. First Nat'l Sec. Corp.*, 104 S.W.3d 259, 264 (Tex. App.—Beaumont 2003, no pet.). In *Sunbelt*, for example, the Supreme Court of Texas reaffirmed that only the court issuing the writ of garnishment may decide disputed issues regarding ownership of funds. 824 S.W.2d at 558.

*Sunbelt* involved funds held by the garnishee bank in the name of a company, which the judgment creditor alleged included personal funds commingled by the individual debtor. *Id.* at 557–58. The supreme court emphasized that indebtedness to a judgment debtor depends on some

form of deposit agreement creating a debtor-creditor relationship. *Id.* at 558. Acknowledging that the scope of a writ of garnishment is broad enough to impound funds of the debtor to which a third party may hold title, the court stated that a creditor challenging title to those funds should seek a writ naming the nominal owner as holding funds from the "true owner." *Id.* (citing *Thompson*, 286 S.W.2d at 414).

The timing of both service of a writ of garnishment and the garnishee's answer date govern the identity of funds trapped. *See First Nat'l Bank in Dallas v. Banco Longoria, S.A.*, 356 S.W.2d 192, 195–96 (Tex. Civ. App.—San Antonio 1962, writ ref'd n.r.e.). Specifically, a writ of garnishment impounds funds in the hands of the garnishee at the time the writ is served through the date garnishee is required to answer. *Id.* A garnishee filing its answer prior to the return day does not alter this period. *Id.* at 196.

## DALLAS MARKET'S SUMMARY-JUDGMENT MOTION

Dallas Market moved for summary judgment as to the $252,111.55 set aside by Wachovia in response to the first writ and which continued to be held after dissolution of that writ. It claimed entitlement to all funds in account 2488, including any loaned funds from a line of credit. It argued specifically that (1) Debtor had an unqualified right to funds in account 2488 (as would Dallas Market standing in Debtor's shoes); (2) at a minimum, it was entitled to the $240,000 moved by Wachovia into a general ledger account prior to Wachovia's answer to the writ of garnishment; (3) accepting as true Art & Frame's claim that the relation between accounts 2488 and 5706 was terminated August 6, 2009, it was entitled to satisfy its judgment from the $945,615,415 in deposits flowing into account 2488 after service of the writ and prior to Wachovia's answer; (4) alternatively, it was entitled to satisfy its judgment from funds in account 2488 because they were held nominally for Debtor; and (5) further in the alternative, it was entitled to funds in account 2488 regardless of

whether they were drawn from a line of credit because garnishment writs reach loaned funds. Dallas Market also sought judgment alternatively against Wachovia because it allowed funds to escape from Debtor's account after service of the writ.

Dallas Market's summary-judgment evidence included affidavits of Mitzi Talley, the executive vice president of administrative services for Dallas Market, which were filed in support of both the original and second writs of garnishment. She proved up the default judgment against Debtor and testified to her belief that Wachovia had property belonging to the Debtor based on checks received from Debtor showing a banking relationship. Her second affidavit included deposition excerpts for George Eouse in his capacity as the president of both Art & Frame and Debtor.

Eouse's deposition testimony confirmed that Debtor was regularly using account 5706 for its business before the first garnishment writ was served. Prior to that service, all revenues from Debtor's business were deposited into account 5706. The funds from account 5706 then transferred automatically to account 2488 every evening pursuant to the zero balance agreement. To his knowledge, funds from account 2488 would pay any checks written on account 5706 if there were not enough funds in account 5706 to cover a check.

Dallas Market's summary-judgment evidence also included Gregory Ledford's deposition testimony in his capacity as a senior vice president for Wachovia in the risk management area for treasury services. His deposition excerpts included testimony that the amount of $252,000 was "frozen" at the time the first writ was served. Those funds were held in a general ledger account. Of the $252,000, $240,000 came through account 2488 but originated from a line of credit to that master account. The remainder came from an account 7193, listed in the name of Art & Frame Direct doing business as AFD Internet Sales. It was his understanding that a zero balance

relationship existed between accounts 2488 and 5706 when the first writ was served.

Ledford described zero balance accounts as accounts used by commercial clients to facilitate concentration of funds. The accounts are always maintained at a zero balance, and funds are maintained in the master account level only. He identified the "Zero Balance Account Service Agreement" dated January 30, 1998 between Art & Frame and Wachovia's predecessor, SouthTrust Bank, which showed the relationship between account 2488 as the master account and account 5706. He testified that the "way that the system operates," the 5706 account is used for general operating purposes and debit and credit transactions that accumulate during the day. Each evening, the bank's computer system calculates the transactions to determine the cash position. If there is a net positive position, the money is moved out to the master account. If account 5706 has a net deficit position, the master account would send the amount of money to that account to bring it back to zero. Art & Frame asked Wachovia to de-link account 5706 from the master account on August 6, 2009.

## ART & FRAME'S SUMMARY-JUDGMENT RESPONSE

Art & Frame responded to Dallas Market's summary-judgment motion, claiming the funds impounded by Wachovia were not being held for the benefit of Debtor nominally in the name of Art & Frame. Specifically, it argued that at the time the second writ of garnishment was served on September 1, no funds in account 2488 could be attributed to transfers from account 5706. It presented exhibits showing that during the relevant period more funds were debited from account 2488 than were credited to that account from account 5706 transfers. It also noted that no funds from account 5706 were deposited into account 2488 after the second writ was served. Additionally, Art & Frame had severed any relationship between accounts 5706 and 2488 prior to service of the second writ, which Dallas Market did not dispute for summary-judgment purposes.

Art & Frame argued secondly that the zero balance agreement covered only checks and not garnishments, quoting that express language from the document. With regard to the $240,000 transferred from account 2488 and to account 5706, it argued the hold on that account was a mistake because the amount was transferred from the line of credit attached to account 2488.

Art & Frame's summary-judgment evidence included the affidavit of John Esguera, the vice president of operations for Art & Frame, in which he testified Wachovia had impounded $252,111.55 in accounts belonging to Art & Frame. It also included an affidavit from Eouse as the chief executive officer of Debtor delineating the judgment against Debtor, the separate employer identification number, and separate ownership by the Eouse Family Partnership Ltd., LLLP.

In addition to Esguera's and Eouse's affidavits, Art & Frame relied on Ledford's deposition testimony in which he testified to the automatic transfer of $240,000 from a line of credit to account 2488, which in turn was transferred to account 5706. Ledford explained that the legal processing employees did not know there was a line of credit and that it would draw down to satisfy the debit. The "error" was that they would not have processed the transfer had they known the money was going to come from the line of credit. "They followed procedure and it inadvertently created the problem."

Ledford's deposition testimony also included confirmation that, at the time of service of the writ, account 5706 did not contain funds to satisfy the judgment. He testified that his legal processing employees had the first writ on August 3 and the $240,000 drawn down from the line of credit was because there were insufficient funds in account 2488. He said that once they realized they had drawn the funds off the line of credit, they returned the money to the line of credit.

## ANALYSIS

Dallas Market assumed for purposes of summary judgment that the relationship between accounts 5706 and 2488 was severed on August 6, 2009. There is no evidence funds were transferred between the accounts after that period. Accordingly, when Dallas Market served Wachovia on September 1 with the second writ naming Art & Frame nominally as holding funds for Debtor as the true owner, no funds were impounded.

Dallas Market's first writ of garnishment impounded Debtor's deposits in the hands of Wachovia on July 31, the date the writ was served, through August 24, the date Wachovia was required to answer. *Banco Longoria*, 356 S.W.2d at 195–96. In its summary-judgment motion, however, Dallas Market sought only those funds in the account through the date of Wachovia's answer. Although Dallas Market identified that date as August 13, the court records show the date to be August 17. Because Art & Frame was not named and served as a third party nominally holding funds for Debtor until September 1, the relevant inquiry, based on Dallas Market's summary-judgment grounds, is what deposits Wachovia held for Debtor on July 31 through August 17.

To answer this question, we must address the nature of the relationship between accounts 5706 and 2488 on July 31, but before August 6 when the accounts were de-linked. Dallas Market does not appear to assert that Debtor owned funds that came from account 7193, listed in the name of Art & Frame Direct doing business as AFD Internet Sales. It also has not alleged a legal theory for ignoring the corporate distinction between Debtor and Art & Frame. And it has not obtained any finding that the entities may be treated as one for purposes of the garnishment proceeding. The relationship between the two accounts for purposes of this garnishment proceeding therefore is determined based on the deposit agreement or agreements with Wachovia. *See Sunbelt*, 824 S.W.2d at 558.

The only deposit agreement in the summary-judgment evidence is the zero balance agreement. That agreement was signed by George House as president of Art & Frame. It was not signed by Debtor. As argued by Art & Frame, the zero balance agreement stated only that Wachovia was authorized to transfer funds from account 2488 to cover "checks" drawn on any zero balance account. It relies on the language of paragraph two of the agreement:

> As long as [Art & Frame's] Master Account contains sufficient available funds to cover *checks* drawn on the Zero Balance Accounts, Bank will pay *checks* drawn on the Zero Balance Accounts which are properly payable in accordance with the separate checking account agreements between [Art & Frame] and Bank with respect to each Zero Balance Account. Bank is hereby authorized to transfer from the Master Account to each Zero Balance Account sufficient funds to cover the *checks* drawn on such Zero Balance Account. Bank is authorized to pay any and all *checks* drawn on any of [Art & Frame's] checking accounts by the officer or agent of [Art & Frame] whose signature appears on the signature cards for such account or on Bank's records, whether such *checks* are presented to Bank for cash or deposit or credit to the personal account or benefit of such officer or agent or otherwise negotiated, and Bank is hereby released from any obligation to make inquiry concerning the disposition of the proceeds of any such item.

(Emphasis added).

Dallas Market argues the agreement is not limited to payment of checks. It claims the zero balance agreement included a one-page document entitled "Zero Balance Account Service Description." That document was attached to Ledford's deposition as exhibit 22a and references in part checks and "other debits" charged against subsidiary accounts. Exhibit 22a also provides that "Customer warrants" that the master account and all subsidiary accounts "shall be owned by one common legal entity, and that the funds in each account are free to be commingled by the Bank."

Exhibit 22a is not signed by any person or entity. The only reference to the document is Ledford's testimony on behalf of Wachovia that to the "best of [his] knowledge," the document is a copy of Wachovia's "zero balance account service description." He testified that the document provided "some descriptions of how ZBA accounts at Wachovia work." He never testified the

document was part of the agreement with Debtor and Art & Frame. He also did not testify that this description, if part of the deposit agreement, would cover writs of garnishment or debts generally, including judgment debts. If the service description was part of the account agreement on July 31, the language of the document shows that the funds in the master account and all subsidiary accounts were "owned by one common legal entity." The parties have not identified, or attempted to identify, that common legal entity owning the accounts.

Deposition testimony attached as summary-judgment evidence provided some information regarding how transfers under the zero balance agreement were applied but did not establish Debtor's true ownership of the funds set aside by Wachovia. Specifically, Eouse testified that prior to service of the first writ, Debtor regularly used account 5706 for its business and that funds from that account transferred automatically to account 2488 every evening pursuant to the zero balance agreement. He confirmed only that "checks" written on account 5706 would be covered from account 2488 if there were insufficient funds in that account. He did not testify to other debits or that Debtor had any other type of access to the master account or other zero balance accounts established by Art & Frame.

Similarly, Ledford's testimony as an officer on behalf of Wachovia provided no additional proof that Debtor was the true owner of the funds set aside. He testified generally as to the nature of zero balance accounts, describing the accounts as vehicles for commercial clients to maintain funds only in a master account level. He specifically identified the zero balance agreement between Art & Frame and its predecessor, but he was unable to state whether it was in effect on July 31. He did describe how "the system operate[d]" for accounts 5706 and 2488. While the operation of the system provides some evidence of the parties' deposit agreement or agreements, Ledford's testimony did not establish as a matter of law that the one page "service description" was part of the parties'

agreement or that it would cover garnishments. Nor did his testimony, or any other testimony, establish that a line of credit attached to account 2488 provided for such coverage. Conversely, he testified that when Wachovia's legal processing employees placed a debit hold for the writ of garnishment, they did not know the hold would draw down $240,000 from the line of credit affiliated with account 2488. He described that as "the error." He further testified that the remainder of the $252,000 "frozen" came from another account, numbered 7193, listed in the name of Art & Frame Direct doing business as AFD Internet Sales.

Dallas Market claimed in its reply in support of summary judgment that the issue "is not a question of whether the ZBA relationship covers judgments, but rather whether [Debtor] had *access* to funds in [account 2488] during the pendency of the writ." It makes the same argument in its appellate brief, exchanging the noun "garnishments" for "judgments." Yet it has cited no authority in support of this argument, either to the trial court or this Court. Access, alone, is not determinative of true ownership of funds. *See, e.g., Sunbelt*, 824 S.W.2d at 558 (unless deposit agreement created debtor-creditor relationship between bank and judgment debtor, bank not indebted to judgment debtor); *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 209 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (quoting *Sunbelt*; holding fact that individual conducted transactions in account did not establish account was his personal account).

The undisputed evidence shows the zero balance agreement between Art & Frame (not Debtor) and Wachovia allowed (until August 6) sweeps of deposits from account 5706 into account 2488, payment of checks drawn on account 5706 from funds in account 2488, and in practice, payment of debits on account 5706. The evidence also shows that Wachovia actually transferred $240,000 from Art & Frame's line of credit into account 2488 and then into account 5706 on August 3—an act later claimed to be a processing error and not allowed by any agreements among the

parties. From this record, we conclude Dallas Market did not prove as a matter of law that Debtor was the true owner of funds in account 2488 or the line of credit attached to that account. Even if "access" were the only inquiry, disputed issues of fact exist regarding what level of access Debtor had to funds in account 2488 during the relevant period. The only deposit agreement contained in the summary-judgment evidence shows Art & Frame and Wachovia were the parties to the agreement. If the service description is part of that agreement, the customer warranted that only one legal entity owned the funds in the master account and all subsidiary accounts. That entity has not been identified by Art & Frame or Dallas Market. Simply stated, Dallas Market did not meet its summary-judgment burden. Accordingly, Art & Frame's issue is sustained.

We observe that Art & Frame urges in the conclusion of its appellate brief that the attorney's fees award to Wachovia should also be set aside. It did not appeal the judgment entered on Wachovia's summary-judgment motion or raise an issue as to the award of attorney's fees. Nor does it state in what way the granting of Wachovia's summary-judgment motion was dependent on Dallas Market's motion. Accordingly, nothing is presented for our review with respect to the attorney's fees award. *See* TEX. R. APP. P. 33.1(f), (i).

## CONCLUSION

All of Dallas Market's summary-judgment grounds for recovery of the $252,111.55 set aside by Wachovia in response to the first writ were based on Debtor's "unqualified right" to funds in account 2488, including "loaned funds" from the line of credit attached to that master account. The summary-judgment evidence did not prove Debtor's ownership of the funds as a matter of law based on the zero balance agreement, the way in which the account was handled prior to de-linking account 5706 from master account 2488, or the level of access Debtor had. Summary judgment in favor of Dallas Market thus was improper, and we sustain Art & Frame's issue. The final judgment granting

Dallas Market's motion and denying Art & Frame's request for relief as to Dallas Market is reversed and remanded to the trial court for further proceedings. Otherwise, the trial court's judgment is affirmed.

_____
MARY MURPHY
JUSTICE

101471F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ART & FRAME DIRECT, INC., Appellant

No. 05-10-01471-CV      V.

DALLAS MARKET CENTER
OPERATING, L.P. AND WACHOVIA
BANK, N.A., Appellees

Appeal from the 160th Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
DC-09-09516-H).
Opinion delivered by Justice Murphy,
Justices Fillmore and Myers participating.

     In accordance with this Court's opinion of this date, the portion of the trial court's September 29, 2010 judgment granting appellee Dallas Market Center Operating, L.P.'s Motion for Summary Judgment on First Writ of Garnishment and denying relief requested by appellant Art & Frame Direct, Inc. is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings. We **AFFIRM** the trial court's judgment in all other respects.  It is **ORDERED** that appellant Art & Frame Direct, Inc. recover its costs of this appeal from appellee Dallas Market Center Operating, L.P.


Judgment entered September 18, 2012.


_____
MARY MURPHY
JUSTICE